[No. 6522.]

## GOLDBERGER v. THE PEOPLE ET AL.

1.   **Practice—Continuance—Discretion—**The granting or refusal of an application for a continuance is largely in the discretion of the trial court.   Only for an abuse of discretion will a judgment of conviction be reviewed on this ground.—(329)

The accused having notice of the day appointed for the trial, must use diligence to prepare for his defense.   The withdrawal of counsel long previously contemplated, with the knowledge of accused, will not be accepted as ground for delay.—(330, 331)

2. Appeals and Writs of Error—Questions Not Raised Below—A statement by a witness, not responsive to a question proposed by the district attorney, will not be ground to reverse a conviction where the accused made no motion to strike it out in the court below.—(332)

3. Harmless Error—The admission of evidence which could not have affected the result, is harmless.—(333)

Withdrawing incompetent testimony from the jury cures the error committed by receiving it.—(333)

4. Instructions—Falsifying the Issue—An instruction which, assuming to state the information, directs an acquittal upon an irrelevant proposition, is properly refused.—(335)

5. Criminal Law—Information—Evidence—The charge of a particular crime admits evidence of the commission thereof by the defendant alone, or in conjunction with another or others, or that he procured its commission. The state cannot be required to elect upon which theory it will proceed, and the jury are not to be limited to any specific theory of the case in this respect.—(336)

*Error to. Pueblo District Court* — Hon. J. E. RIZER, Judge.

Mr. ALFRED W. ARRINGTON, for plaintiff in error.

Messrs. DIXON & DIXON, of counsel.

Hon. WILLIAM H. DIXON, attorney general; Mr. GEORGE D. TALBOTT, assistant attorney general; Hon. JOHN T. BARNETT, attorney general; Mr. JAMES N. BRINSON, assistant attorney general, for the people.

Mr. JUSTICE BAILEY delivered the opinion of the court:

On January 20, 1908, in the Pueblo county district court, the plaintiff in error, defendant in the lower court, was convicted of the crime of arson, and sentenced to serve a term of years in the state penitentiary. The information upon which conviction was had is in three counts, the only difference between them being as to the ownership and description of property. The three buildings destroyed

were adjacent, but located on separate lots, with different ownership as to two of them. The first count, which is identical with the other two, except in the respects above indicated, is in substance as follows: "That on or about the 29th day of September, A. D. 1907, the defendant, at the county of Pueblo and State of Colorado, did then and there unlawfully, feloniously, willfully and maliciously burn and cause to be burned a certain building, to wit, a store-house, the property of Thomas J. Downen, as public trustee in and for Pueblo County, Colorado, known as 124 South Union Avenue, in the City of Pueblo, County of Pueblo and State of Colorado aforesaid, contrary to the form of the statute in such cases made and provided." Upon a verdict of guilty as charged in each of the counts, a motion for a new trial by the defendant having been meanwhile overruled, judgment and sentence were pronounced. To review said judgment and sentence. the defendant brings the case here on error.

Counsel for defendant directs special attention to three grounds of alleged error: First, the refusal of the court to grant defendant's application for a continuance of the cause, interposed on January 13th, the day for which the trial had been formerly, and on December 2nd, set down; second, in the admission of certain testimony by the fire chief of Pueblo, Patrick D. McCartin; and, third, in refusing to give instruction numbered 5 requested by the defendant, and in giving paragraph 11 of the court's general charge to the jury.

In reference to the supposed error in refusing to grant the continuance asked by the defendant, it will be observed that it is settled law in this jurisdiction that "the granting or refusing of applications for a continuance rests largely in the discretion of the trial court, and the doctrine established

in this state is that only for an abuse of such discretion will a reversal be had."—*Hockley v. The People,* 30 Colo. 119.

A critical examination of the record fails to disclose anything suggestive of an abuse of discretion by the trial court in denying the continuance prayed. The information was filed early in October, that being the September term of the court. The next term of the court opened in November, when the defendant was arraigned and entered plea.. At that time postponement of the time of setting the cause for trial was had, at the request of the defendant, until December 2nd, at which latter date the case, by consent, was set down to be tried on January 13th following. Statement was made in open court, in the presence of defendant, by his then record attorney, that this would give ample time in which to prepare the case. The trial judge, in overruling the motion for a continuance, among other things, said: "The court must take judicial cognizance of what has appeared to the court from time to time. It is not fair to state that Mr. Saunders remained unqualifiedly in your case until the other day. When this case was called for setting on the 21st day of November, Mr. Saunders expressly limited his appearance for the purpose of having the case set down as far off as possible. He did not appear unconditionally, as stated." It is clearly apparent from the record that, if the defendant was not prepared to go forward with the case, at the time it was set for trial, it is wholly his own fault, and comes from his want of diligence in that behalf. The defendant was in court when the case was set, and understood fully when the trial would occur, and it was incumbent on him to make the necessary arrangements to that end. At that time, he well knew that probably Mr. Saunders would not continue as attorney, and it was his duty

to have that matter promptly and definitely settled, and if it developed that Mr. Saunders was to retire, then the defendant should have immediately retained other counsel. He will not be permitted to speculate upon the possibility of the withdrawal of his attorney to obtain a continuance. If that might be done once, there is no limit to the number of times like action might be insisted upon and secured, to the utter demoralization of the court's general business and the efficiency of its work. The trial judge was intimately acquainted with the case, as well as with the relations of attorneys to it, and was in far better position to act fairly and justly in the premises than is this court, and in the absence of any showing whatever on the part of the defendant of diligence in preparing his cause for trial, this court is not warranted in saying that there was an abuse of discretion in denying that application. Further, there is much in the record, if one reads between the lines, to indicate that the defendant sought to make use of the fact of the possible retirement of his original counsel to effect a postponement of the hearing.

As to the second ground of alleged error, that of permitting Fire Chief McCartin to testify and give his opinion that the fire was probably caused by fumes from gasoline and gas turned on in the building, the record shows on this point as follows: The district attorney asked this question: "You may state to the jury what, in your opinion, if anything, aided, or added to, or caused, the conflagration or flames which you observed at the Goldberger fire that night?" (Objected to as incompetent; objection overruled; excepted to by defendant.) Answer: "We have had a great many gasoline fires here, and gasoline was saturated through the clothes, and gas turned on and a match struck to it, would blow the whole place up." It will be instantly noted that this

is mere volunteer testimony. It was not responsive
to the question, and was not sought by the district
attorney. If a motion had been made, as it should
have been, to strike that answer from the record, it
no doubt would promptly have been sustained, be-
cause it was not responsive in any sense to the
question asked, was not called for by it, and could
not have been anticipated by any one connected with
the trial. The answer no doubt was a surprise to the
district attorney, and should have been to counsel
for defendant. But no objection was made to it, no
motion to strike it out was then interposed, and the
defendant, therefore, has no proper record here upon
which to assign error upon the fact that such answer
remained before the jury. The court's attention
was never directed to that objectionable testimony,
and no opportunity was given for action in refer-
ence thereto. Thus it must be clear that the defend-
ant is now in no position to urge error on this ground,
since the court was not requested to act, never had
an opportunity to act, and must have, from the very
nature of things, acted favorably to the defendant,
had the position of his counsel in reference thereto
been definitely called to its attention. Thereupon
the district attorney, evidently realizing that said
answer had not been responsive to his question, re-
peated it in substance, as follows: "What was the
cause of the fire that night, in your judgment?"
Answer: "Fumes from gasoline and also the gas
turned on in the building." This witness had previ-
ously testified that he had examined the premises
the morning after the fire and found a "T" gas fix-
ture from which the nipples had been torn off or
unscrewed, so that gas might escape; also that he
then and there found a can of gasoline about half
full of that fluid. Police Officer Elliott testified that,
immediately preceding the fire, he heard a terrific

explosion, and that about half of the front of the building at No. 124 was thrown almost across the street; the witness, Doctor Frantz, who slept in the apartment immediately above that number, testified that he was first distinctly aroused by a strong smell or odor of petroleum. Upon such a collection of undisputed facts, the conclusion is irresistible that gasoline fumes and the gas turned on in the building cut the chief figure in, and was the main reason for, the conflagration. Under this peculiar situation, we are not prepared to say that the last question and answer, against which the assault of defendant's counsel alone, in the condition of the record, may be properly directed, were improper. Certain it is that, upon these facts and under these circumstances, it may safely be said that, even if technical error was committed, it was clearly without prejudice, because the jury, upon the facts, could not have found, either with or without the chief's answer, otherwise than it did. Besides, at the close of the state's case, the district attorney requested, in the following language, to have this objectionable matter excluded. "I think the state will have no further witnesses and evidence to offer, but I now desire to ask permission to strike from the record and the consideration of the jury, and have withdrawn from their further consideration, the testimony of Chief McCartin as to what, in his opinion, aided or abetted this fire over there; in other words, his opinion, that the fire was started or caused by an explosion of coal-oil, gas and gasoline, as I believe that is a matter for the jury to determine." In response to this request, the judge said: "The court was very much in doubt at the time whether it was admissible; your motion shall be sustained, and that testimony shall be stricken from the record and the consideration of the jury." We are confidently of the opinion that this was a sufficient

instruction to the jury not to consider this testimony, and that the same was thereby properly taken from its consideration.

The refusal of the court to give instruction-numbered 5 asked by defendant, is assigned for error. The proposed instruction is as follows: "If you, after full and careful consideration of the evidence in this case, entertain a reasonable doubt as to the identity of the Charles Hathaway mentioned in the information herein with the body of the corpse testified to as found in store-room 124 South Union Avenue, immediately after the fire thereat on September 29th, 1907, then it is your duty to acquit the defendant, M. Goldberger." It will be observed that the information charges the direct offense of arson against the defendant Goldberger alone. The information itself couples Hathaway with Goldberger in no manner, and does not name or refer to him at all. The offered instruction neither states the law applicable to the case, nor the facts, correctly. Such an instruction would have permitted the conviction of Goldberger for arson only in the event that the jury should first find, from the testimony, beyond a reasonable doubt, that the person Hathaway lost his life in the burning. It might well be believed that Goldberger and Hathaway conspired to burn the property, and that Hathaway thereupon fled the country, and that the body found in the burned building was that of some third person, and possibly an innocent victim of the unfortunate occurrence. Under such conditions, will defendant's counsel contend that Goldberger was not guilty of the crime of arson, simply because the body of the dead man was not shown, beyond a reasonable doubt, to be that of Hathaway? A mere statement of this possible situation—and others even more potent and convincing will readily suggest themselves—is a complete refu-

tation of the legal right of defendant to have that instruction given. Aside from the fact that this proposed instruction assumes that the defendant and Hathaway were jointly informed against, which is not true, it fails to state a correct principle of law applicable to the case as made.

Paragraph 11 of the court's charge, to which objection is made, reads as follows: "You are further instructed that if you believe, from the evidence, beyond a reasonable doubt, that the defendant personally, or in conjunction with any other person or persons whomsoever, or that the defendant, by aiding, advising or abetting any other person or persons whomsoever, to feloniously, willfully and maliciously set fire to and burn, did so burn, or caused to be burned, any of the buildings described in the information herein, he is guilty of arson as charged in the information as to any such building or buildings, if any, which you find were so burned." We are unable to see how a more succinct and accurate statement of the facts and circumstances necessary for the jury to find in order to warrant a verdict of guilty, could well have been formulated. The information charges the defendant, Goldberger, directly and personally, with the offense of arson. The state was not committed by this charge to any one theory or to any single line of proof, as is contended for defendant by his attorney. If, upon the whole testimony adduced, the jury could find, beyond a reasonable doubt, that Goldberger, either personally, or in conjunction with any other person or persons whomsoever, feloniously burned the buildings, or if it could find that he, by aiding, advising or abetting any other person or persons whomsoever, procured the felonious, willful and malicious burning of them, or either of them, then he was guilty, and it was the sole province of the jury, upon all of the testimony,

to determine that precise question. This instruction
is clearly right, under the peculiar circumstances
here shown. There was testimony to support, and
the jury was warranted in returning, a verdict of
guilty, upon the theory that the defendant person-
ally set out the fire, or upon the theory that he con-
spired with Hathaway and so procured it to be set
out, or that the defendant, Hathaway, and the wit-
ness Freund combined together to perpetrate the
offense, or that he and Freund were the guilty co-
conspirators. It would indeed be a novel doctrine if,
under these conditions, the defendant by motion
could have compelled the state to elect upon which
theory it would proceed. Under our practice and the
charge made, in view of the circumstances of this
case, as disclosed by the testimony, the state had a
right to an instruction which permitted the jury,
upon all of the evidence, to determine the ultimate
fact of guilt, without a limitation confining it to a
consideration of any specific theory or aspect of
the case.

For our own satisfaction, we have examined the
entire record, voluminous though it is, and are satis-
fied that the defendant has had a full, fair, just and
impartial trial. We are further satisfied that the
verdict reached by the jury is abundantly supported
by the testimony. Indeed, we fail to see how any
other verdict could have been reached by an intelli-
gent jury, impelled by a sense of duty to uphold and
enforce the law and punish crime. The prosecution
was conducted with marked ability, and counsel for
the defense exhausted every proper legitimate means
known to the law, in a thoroughly professional and
skillful way, showing a complete preparedness of,
and detailed acquaintance with the case, to save their
client from the result of his deliberate wrong-doing.

Other errors are assigned. but they have not

been urged, either in the printed brief or upon oral argument. However, in a general review of the case we have examined and considered them all, and find them without merit.

Upon the whole record, the case is singularly free of prejudicial error, and, in this respect, considering its importance and the length of time involved in the trial, is in a degree notable.

It is believed that exact justice has been done, and that no mere technicalities, not of substance, should intervene to save the defendant from merited punishment, and the judgment and sentence should therefore be affirmed.  *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HILL concur.