## No. 15,840.

### ROUTA *v.* THE PEOPLE.
(192 P. [2d] 436)

Decided March 15, 1948.   Rehearing denied April 12, 1948.

Mr. F. E. DICKERSON, Mr. EDWARD A. JERSIN, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

MR. JUSTICE HAYS delivered the opinion of the court.

JOHN ROUTA, plaintiff in error, to whom we hereafter refer as defendant, was charged in an information in the district court of Denver with the crime of burglary with force in the first count, and with the previous conviction of felonies in counts 6, 7 and 8 of said information, pursuant to the habitual criminal statutes, S.L. '45, p. 310, c. 114. He entered a plea of not guilty with respect to

the substantive count No. 1 of said information and denied his identity with respect to counts 6, 7 and 8. Count 2 was withdrawn by the trial court and counts 3, 4 and 5 relate to a codefendant not appearing here. The jury returned verdicts finding defendant guilty of burglary with force; also that he had suffered previous convictions as charged in counts 6, 7 and 8 of the information, and formal judgment followed. To review the proceedings in the district court defendant brings error.

It is first contended by counsel that defendant was prejudiced by the insertion in the caption of the information of several aliases, namely, as John Routa, alias Jack John Routa, alias Joun Route, alias Jack Ross, alias Porky Routa.

In support of the contention that prejudice resulted from the insertion of said aliases in the caption of the information, the only case cited and upon which defendant's counsel relies, is *People v. Grizzel*, 382 Ill. 11, 46 N.E. (2d) 78, wherein the court said: "It is generally understood that a man's reputation is not enhanced by connecting many aliases with his name and certainly *if the record does not offer substantial evidence of any aliases it is improper to refer to the defendants as such* in the instructions given by the court. People's instructions Nos. 1, 2, 7, 9, 10 and 11, should not have been given describing each of the defendants with a number of aliases. The aliases should have been eliminated before giving the instructions to the jury." (Emphasis supplied)

In the present case there was substantial evidence with respect to the aliases. In previous cases defendant was convicted under the name of "John Routa," "Jack John Routa, also known as 'Porky Routa'," and under the name of "Jack Routa."

Our statute with respect to habitual criminals provides inter alia that, "Such former conviction or convictions, and judgment or judgments shall be set forth in apt words in the indictment or information." S.L. '45,

p. 310, §1. "On any trial under the provisions of this act a duly authenticated copy of the record of former convictions and judgments of any court of record for any of said crimes against the party indicted or informed against shall be prima facie evidence of such convictions and may be used in evidence against such party." S.L. '45, p. 311, §2. "Whenever the fact of previous convictions of other offenses is included in an indictment or information, the jury, if they find a verdict of guilty of the offense with which he is charged, must also, unless the defendant admits the previous convictions, find whether or not he or she has suffered such previous convictions." S.L. '45, p. 311, §3.

When the defendant was arraigned, he could have admitted the previous convictions or denied his identity. As previously stated, he denied his identity and therefore, under the statute, it was incumbent upon the people to prove his identity and the previous convictions, and it became the statutory duty of the jury to "find whether or not he or she has suffered such previous convictions."

During the trial there was much discussion between the court and counsel as to the propriety of leaving the aliases in the caption. The trial judge said, "Would it help any if we asked the district attorney not to read them, but to leave them in the caption, so if there is any significance they will be there?", to which defendant's counsel answered: "Absolutely. When it comes around to the forms of verdict—and I call it to your Honor's attention now—I intend to make request that the caption be not placed on those verdicts. It is enough to convict anybody." Again, as appears from the record, the court observed, "they allege the defendant John Routa was convicted as John Jack Routa," to which defendant's counsel replied: "Of course I won't object to that." Also in the record we find that defendant's counsel conceded that it was proper to place in the caption an alias, if defendant had previously been convicted

under such name, and at one place counsel stated: "We admit all three convictions. That is all that is required. That satisfies the allegations. We cannot deny it later to this jury. They have proven that. Not only that, we admit them. I object to this cross-examination. It only takes time and encumbers the record. The Court: You have not admitted them exactly as set out in the information. Mr. Dickerson: Then I will do so now."

In the instructions to the jury, at the request of counsel, the court omitted all aliases except Jack John Routa and Porky Routa.

In view of the above circumstances defendant was not prejudiced by the insertion in the caption of the information the several aliases to which reference has been made above, and the court did not err in denying defendant's motion to strike said aliases.

It is unnecessary to repeat the objections to the promiscuous use of many aliases in informations, and the rules in relation thereto. They are fully discussed in the following authorities: 42 C.J.S. 1017, §127 e.; *D'Allessandro v. United States,* 90 F. (2d) 640, 641; *People v. Maroney,* 109 Cal. 277, 41 Pac. 1097; *Antone v. State,* 49 Ariz. 168, 65 P. (2d) 647, 649; *Commonwealth v. Torrealba,* 316 Mass. 24, 54 N.E. (2d) 939.

■ It next is contended that the court erred in refusing to permit defendant's counsel to inform the jury on voir dire, that the penalty, if defendant was convicted on all counts, was life imprisonment; that the penalty is automatic and fixed by the legislature; and that the court is vested with no discretion therewith.

With respect to the above contention the following occurred on the voir dire examination of the jury:

"Mr. Dickerson: (To Prospective Juror Pegram): You understand this habitual offenders' act involved in this case, do you not, and the serious consequences it entails? Juror: Yes.

"Mr. Dickerson: You would give this case the con-

sideration it deserves and bear in mind its grave consequences? Juror: Yes.

"Mr. Dickerson: In other words, whatever you do in this case makes it automatic, as far as the habitual offenders' act is concerned; his Honor Judge Steele has no discretion in that matter, either, do you understand that?

"Mr. Anderson: It has nothing to do with it, and we object.

"Mr. Dickerson: We think the jury is entitled to know about the habitual offenders' act and to know its consequences, because the jury have nothing to do with the punishment under that act and the court has nothing to do with it, and the jury is entitled to know what kind of a case they are trying. It is not a question of any penalty the court is going to impose, or anything of that kind, and the jury have nothing to do with it. I submit that we have a right to show that the penalty has been fixed automatically by the legislature.

\* \* \*

"The Court: I think counsel for the defense is entitled to tell the jury the statute fixes the penalty, without telling the jury what the penalty is."

After further discussion out of the presence of the jury, the court said:

"I would like to say, for the record, that at this point all of the members of the panel from which this jury will be chosen were in the courtroom when the examination of the jurors in the box was being made by defendant Routa's counsel, Mr. Dickerson, and presumably they all heard his statements to the effect that the defendants were charged in the Information with being habitual criminals under the statutes of Colorado, and that the effect of a verdict of guilty on the counts charging former convictions would be to increase the penalties to be imposed, provided the jury should find the defendants guilty of burglary as charged in the first two counts. In fact, from what counsel for defendant Routa has already told the jurors, they could very easily infer

and believe that the defendants, upon a conviction, could be sentenced to life imprisonment in the penitentiary.

"It is the order of the court that counsel for the defense and for the People refrain from now on, in their interrogation of the jurors, from making any reference to the penalties and punishment which may be inflicted upon the defendants in event of conviction of being habitual criminals. Any further reference to it, on either side, could and probably will result in a mistrial."

We have many times held that matters, such as the above, are clearly within the sound discretion of the trial court, and that in the absence of abuse of discretion its ruling thereon will not be disturbed on review. *Van Houton v. People,* 22 Colo. 53, 43 Pac. 137; *Wheeler v. People,* 63 Colo. 209, 165 Pac. 257; *Flor v. People,* 73 Colo. 403, 215 Pac. 875. We conclude that the trial court did not abuse its discretion, and that the rights of the defendant were not prejudiced.

■ ■ It next is contended that the trial court "improperly allowed the state to initiate evidence of the reputation of the accused" in permitting proof of previous convictions. In that connection defendant freely admits that no objection was made thereto, "through our inadvertence."

The obvious answer to the above contention is that, the people did not initiate the matter but on the contrary, the information concerning his former convictions was first brought before the jury by the defendant himself on voir dire examination of the jury as above set out. It therefore appears that any prejudice which might have resulted to the defendant by reason thereof was caused by defendant himself through his counsel, and not the district attorney. A second answer is that, three witnesses testified concerning the prior convictions of defendant, identified him as the person previously convicted, and the record of such convictions was introduced in evidence as the statute provides. No objection whatsoever was made by defendant's counsel to any of

such evidence. By the instructions, the issues with respect to counts 6, 7 and 8, being the habitual criminal counts, were expressly submitted to the jury by the court as being a part of the issues which the jury was called upon to determine. There was no objection whatever by defendant's counsel to said instructions.

A further answer to the last contention of plaintiff in error is that, section 488, chapter 48, '35 C.S.A., provides: "Hereafter in all criminal cases tried in any court of this state, the accused, if he so desire, shall be sworn as a witness in the case, and the jury shall give his testimony such weight as they think it deserves; but in no case shall a neglect or refusal of the accused to testify be taken or considered as any evidence of his guilt or innocence."

Section 1, chapter 177, '35 C.S.A. as amended (S.L. '41, c. 236, §1), provides: "All persons, without exception, other than those specified in sections 2, 3, 4, 5, 8, 9 and 10 of this chapter, may be witnesses. Neither parties nor other persons who have an interest in the event of an action or proceeding shall be excluded; nor those who have been convicted of crime; nor persons on account of their opinions on matters of religious belief; although in every case the credibility of the witness may be drawn in question, as now provided by law, but the conviction of any person for any felony may be shown for the purpose of affecting the credibility of such witness; and the fact of such conviction may be proved like any other fact not of record, either by the witness himself (who shall be compelled to testify thereto), or by any other person cognizant of such conviction, as impeaching testimony or by any other competent testimony; provided, however, that evidence of a previous conviction of a felony where the witness testifying was convicted five years prior to the time when the witness testifies shall not be admissible in evidence in any civil action."

■■ It was the defendant's right and privilege under the above statutes, to refuse to take the witness

stand in his own behalf and the district attorney would be precluded, in that event, from making any comment to the jury concerning his failure to testify. However, where a defendant elects, as he did here, to exercise the privilege of becoming a witness in his own behalf, his credibility is thereupon open to question, his testimony subject to the ordinary rules of evidence and to impeachment, and he may be cross-examined in the same manner and to the same extent as any other witness in the trial. *Tarling v. People,* 69 Colo. 477, 194 Pac. 939, note 25 A.L.R. 340; *Dennison v. People,* 65 Colo. 15, 174 Pac. 595; *Hendricks v. People,* 78 Colo. 264, 241 Pac. 734; *Davis v. People,* 77 Colo. 546, 238 Pac. 25; *Dively v. People,* 74 Colo. 268, 220 Pac. 991, cited in note, 58 A.L.R. 87; *Dockerty v. People,* 96 Colo. 338, 351, 44 P. (2d) 1013.

Since the defendant herein elected to exercise the statutory privilege of testifying, all of the facts concerning his previous convictions became admissible. When he accepted the privilege conferred by the statute, he also accepted whatever disadvantages resulted therefrom.

Under the above circumstances defendant is completely precluded from asserting or claiming that he was in any manner prejudiced by the introduction in evidence of facts concerning his previous convictions, and any right which he may have had to object thereto has been waived. *Martinez v. People,* 55 Colo. 51, 132 Pac. 64; *Holland v. People,* 30 Colo. 94, 69 Pac. 519; *Spoo v. State,* 219 Wis. 285, 262 N.W. 696; *Salisbury v. State,* 80 Okla. Crim. 13, 156 P. (2d) 149.

We approve of the procedure outlined in the dissent of Mr. Justice Hilliard with the modification that where defendant testifies in his own behalf, as here, or where evidence of former convictions is introduced in impeachment, the question of former convictions is thus opened for consideration and resolution, and the main charge may then be submitted and disposed of without separation.

We have carefully examined the record with respect to other contentions of defendant's counsel and find such contentions to be wholly without merit.

The judgment is therefore affirmed.

MR. JUSTICE HILLIARD, MR. JUSTICE ALTER, and MR. JUSTICE LUXFORD dissent.

MR. JUSTICE HILLIARD dissenting.

As our late distinguished brother Campbell observed in *Bean v. Eves*, 92 Colo. 339, 342, 20 P. (2d) 544, 545, in which there was a situation not wholly unlike the one here, the opinion which I "prepared on the supposition" that I was expressing the views of the court, "is now filed as a dissenting opinion."

Preliminary to setting forth what originally I had composed, in which now, of course, the authoritative plural personal pronoun gives way to the singular form, it is appropriate, I think, that I give attention to the reasoning on which the court concludes, that, notwithstanding the appearance of grave and prejudicial error below, not gainsaid in its opinion, or even discussed, to consign the unhappy defendant to lifetime imprisonment for a crime — burglary — in and of itself carrying a penalty only of not to exceed ten years. As will more fully appear in my earlier effort, presently to be stated, the all important question is, Was defendant accorded a fair trial? Defendant's contention is that the court improperly allowed the prosecution to initiate evidence of his reputation, that is to say, during the presentation of the people's case in chief. Otherwise stated, that in the first instance, when, necessarily, the court was engaged in receiving evidence in support of the substantive charge of burglary, in the course thereof, as abundantly appears, not questioned, it also received evidence of defendant's alleged former convictions. Evidence of former convictions goes to the credibility of the accused as a witness, and is never admissible in the case in chief. In

the books such evidence is denominated "rebuttal," meaning, applied here, as following, or coming after, defendant shall have testified. Otherwise stated, it is impeaching evidence, and its office is to discredit defendant as a witness, that is to say, weaken his defense, not to strengthen or support the case of the prosecution. Employment of impeaching evidence in the first instance constitutes prejudicial error. *Martin v. People,* 114 Colo. 120, 162 P. (2d) 597; *Ryan v. People,* 66 Colo. 208, 180 Pac. 84; *Ray v. People,* 63 Colo. 376, 167 Pac. 954. The trial court, although it overlooked the rule when it was in order to reject the impeaching evidence, and after the damage had been done, was mindful thereof when it instructed the jury, as witness instruction No. 11. "The court instructs the jury that there is evidence in this case that defendants [there were two defendants at trial] have been previously convicted of felonies. You are instructed that under our statutes this evidence may be considered by you as affecting the credibility of the defendants as witnesses when they take the stand in their own behalf." But, contends the prosecution, and the court's opinion is justified thereon, counsel for defendant did not object to the course pursued below, hence, as emphasized, "defendant is completely precluded from asserting or claiming that he was in any manner prejudiced by the introduction of evidence of facts concerning his previous convictions." What the court's opinion really means, is, that, we are "precluded" from examining the prejudicial error appearing. That I deny. Not only does such holding violate the cardinal principles of criminal justice, as courts of review generally recognize, but it is contrary to our own opinions. "When such an error appears and justice requires its consideration this court will not ignore it." *Leech v. People,* 112 Colo. 120, 146 P. (2d) 346. "The situation in the case at bar demands" that we examine as to "objections not made below." *Paine v. People,* 106 Colo. 258, 103 P. (2d) 686. See, also, *Hoppal v. People,* 102 Colo. 524, 81 P. (2d)

381; *McRae v. People,* 101 Colo. 155, 71 P. (2d) 1042; *Heppin v. People,* 95 Colo. 192, 34 P. (2d) 71. The foregoing, while constituting our recent pronouncements on the point involved, is not an exhaustive list of our decisions to the effect, that, regardless of the failure of counsel, below or on review, to object to the offer of evidence, or except to rulings thereon, or to present, assign, or in any manner emphasize, that which constitutes grave error, we may, and in fairness should, predicate thereon an order of reversal and remand for a new trial. Reviewing tribunals in other jurisdictions have made notable contribution to the thought involved in our decisions reviewed above. I quote from a few as follows: ."While no objection was taken * * *, the error was so grave and its prejudicial character is so manifest that in the due administration of justice it cannot be overlooked, and we deem it our duty in the exercise of our discretion to order a new trial." *People v. Weiss,* 114 N.Y.S. 236, 129 App. Div. 571. "In criminal cases, where the life, or as in this case the liberty, of the defendant is at stake, the courts * * *, in the exercise of a sound discretion, may notice such a grave error * * *, although the question it presents was not properly raised in the trial court by request, objection, exception, or assignment of error." *Sykes v. United States,* 204 Fed. 909. "The court must do its duty in a criminal case, whether counsel do so or not. It is to the court that the accused has a right to look to see that he has a fair trial." *People v. Murray,* 172 Mich. 10, 40 N.W. 29.

While the rule of evidence that previous convictions may not be shown initially by the prosecution, is not challenged in the court's opinion, as, of course, it could not be, nevertheless, the court does say, that, "The obvious answer * * * is that, the people did not initiate the matter but on the contrary, the information concerning his former convictions was first brought before the jury by the defendant himself on voir dire examination of the jury * * *. It therefore appears that any preju-

dice which might have resulted to the defendant by reason thereof was caused by the defendant himself through his counsel, and not the district attorney." The court's remarkable statement not only is not supported by authorities, not conceivable, as my research reveals, but the attorney general makes no argument to that effect. Nothing of the kind was involved in the voir dire examination of jurors. Bearing in mind the attorney general stated in his brief, that, "Unfortunately, there appears still to be some misunderstanding among members of the bar relative to the proper procedure in habitual criminal cases," it is not surprising, I think, that counsel for defendant proceeded with some uncertainty as he examined the jury. Already, as the record shows, the district attorney, proceeding to like examination in behalf of the people, had read the information and its several counts to the jury, one for the substantive offense and the others for alleged previous convictions. What defendant's counsel sought, and nothing else was involved, was to be allowed to "say to the jury on voir dire that if defendant John Routa is convicted in this case on all counts charged in the information, that he will get life imprisonment," as the law undoubtedly provides. How that incident can be construed as justifying the doctrine announced by the court, is beyond my ken. It is familiar learning that nothing set forth in the information, or said by counsel in argument or otherwise, or by the court in rulings or otherwise, is to be construed as evidence for any purpose whatever. The universality of that rule is so recognized in this jurisdiction, that a standard or "stock" instruction to that effect is given.

But, says the court in its opinion, where a defendant elects, as he did here, to exercise the privilege of becoming a witness in his own behalf, his credibility is thereupon open to question, his testimony subject to the ordinary rules of evidence and to impeachment," etc. The weakness of this position, as I conceive, is, that, the

"impeaching evidence" came before, not after, defendant testified, a fact ignored by the court. That defendant testified subsequently does not justify or excuse the error committed by the prosecution in presenting its case in chief, and the court's reference thereto, as I believe, but emphasizes the gravity thereof. "Two antagonistic methods for the judicial investigation of crime and the conduct of criminal trials have existed for many years. One of these methods favors this kind of evidence in order that the tribunal which is engaged in the trial of the accused may have the benefit of the light to be derived from a record of his whole past life, his tendencies, his nature, his associates, his practices, and, in fine, all the facts which go to make up the life of a human being. This is the method which is pursued in France, and it is claimed that entire justice is more apt to be done where such course is pursued than where it is omitted. The common law of England, however, has adopted another and, so far as the party accused is concerned, a much more merciful doctrine. By that law the criminal is to be presumed innocent until his guilt is made to appear, beyond a reasonable doubt, to a jury of 12 men. In order to prove his guilt it is not permitted to show his former character or to prove his guilt of other crimes." *People v. Shea*, 147 N.Y. 78, 41 N.E. 505. See, also, *State v. O'Donnell*, 191 Wash. 511, 71 P. (2d) 571. "Here," as in a similar situation the Indiana Supreme Court has said, "the State placed in the case an issue which should have been under the exclusive control of the accused. The error in allowing the issues to be improperly enlarged in this particular was necessarily prejudicial to appellant's defense, and it could not be cured by the subsequent action of the accused in introducing evidence on an issue that was illegally forced upon him." *Stewart v. State*, 184 Ind. 367, 111 N.E. 307. "This policy of the Anglo-American law is more or less due to the inborn sporting instinct of Anglo-Normandom —the instinct of giving the game fair play even at the

expense of efficiency of procedure. This instinct asserts itself in other departments of our trial-law to much less advantage. But, as a pure question of policy, the doctrine is and can be supported as one better calculated than the opposite to lead to just verdicts. The deep tendency of human nature to punish, not because our victim is guilty this time, but because he is a bad man and may as well be condemned now that he is caught, is a tendency which cannot fail to operate with any jury, in or out of Court. There are also indirect and more subtle disadvantages.

"The rule, then, firmly and universally established in policy and tradition, is that the prosecution may not initially attack the defendant's character." 1 Wigmore on Evidence (3d ed.), p. 456, §57. What further I should say appears in my original opinion, which follows.

Defendant in a criminal information, plaintiff in error here, was charged in one count with burglary with force. By three additional counts it was alleged that theretofore, and on as many occasions, he had been convicted of other felonies, sentenced thereon and confined pursuant thereto. The purpose of the added counts, assuming conviction on the first, was to cause defendant to be punished pursuant to the legislative act of 1945 S.L. '45, p. 310, c. 114, '46 Supp. '35 C.S.A., c. 48, §555, as an "habitual criminal," that is to say, imprisoned for life, rather than for one to ten years, the statutory penalty for burglary. '35 C.S.A., c. 48, §82.

In the situation appearing, it is clear that two issues, wholly separate and apart, were presented: (1) Was defendant guilty as charged in the first count of the information? This issue was of primary consideration, and had to do only with that charge. (2) Had defendant previously been convicted of other felonies, as charged in the additional counts? This was of secondary consideration, and had to do only with the penalty to be imposed in the event of conviction on the first count. Otherwise expressed, unless and until there was convic-

tion of the crime charged in the first count, the other counts were without office or purpose; and if conviction were to fail on that count, the so-called other counts would become functus officio, sans life ab initio. When arraigned, defendant pleaded not guilty of the substantive charge in the first count, and, standing mute on the charges of previous convictions, the court entered for him a "denial of identity."

In what manner, therefore, should the trial of the case have been conducted? The statute of the prosecution's reliance does not state. More particularly, should evidence have been received and commingled in chief in support of all counts of the information, that is to say, the substantive one of the charge of burglary, and the others charging previous convictions? Or, in the first instance, should the prosecution have been limited to the presentation of evidence in support of the current charge? Whatever the correct answer in the premises, to which presently I shall give attention, the court tried the case precisely as if all the charges pertained to current crimes and properly were set forth in one information and triable together. In short, the jurors not only heard evidence for the prosecution in support of the first count, but were deluged with exhibits certifying to defendant's alleged previous convictions. In addition to commingling the evidence, part relevant to the substantive charge for which he was on trial, but not to those of the former convictions; and part relevant to such convictions, but irrelevant to the first count, the court submitted the two unrelated issues to the jury at the same time, caused appropriate forms of verdicts covering the several counts to accompany its instructions, and received and recorded simultaneously the jury's verdicts, that of guilt as to each count. Following denial of a motion for a new trial, the court, adjudging defendant's guilt in accordance with the verdicts, imposed sentence for the period of his natural life.

It is not set out in the statute at what stage of the

proceedings documents and other evidence of previous convictions shall be received, nor does it provide that such evidence may be employed in chief, as the prosecution goes about establishing the substantive crime for which an accused currently is on trial. Clearly, as I am persuaded, such evidence would not be competent or relevant to that issue, and if received before the jury has passed thereon, as was the case here, would constitute prejudicial error. Proof of guilt of a specific crime must be established by evidence of facts material and relevant to that crime, and evidence of former convictions on other charges is not relevant thereto. The foregoing, as I trow, is hornbook law. But the statute does provide that such evidence is competent for the purpose of proving previous convictions. So, on the information here, although the statute does not outline the manner thereof, it should not be regarded as beyond our power, and assuredly not above our proper concern, to state a rule which will enable prosecuting officers to make full use of the habitual criminal statute, and at the same time require that the jury, as it ponders the question of the guilt of the accused on the current and controlling charge, shall not be influenced by irrelevant evidence of former convictions. In relation to an earlier habitual criminal statute, repealed by the present one, we announced that "construction of the statute and a clarification of this procedure is indispensible," and justifying under article VI, section 2 of our Constitution, we outlined the course which trial courts should follow. *People v. Wolff*, 111 Colo. 46, 137 P. (2d) 693. Incidentally, we proceeded there notwithstanding the point had not been raised below or stressed on review, to state: "Because of the length of the sentence and the possibility that defendant may have been prejudiced we elect to overlook technical defects and assume that the error appearing is properly assigned and relied upon." Here, it is proper to say, that, although counsel frankly announce that "through our inadvertance" proper objection, etc.,

was not interposed below, they contend on review that admission of evidence of the alleged previous convictions in the first instance, was so prejudicial that justice should move us to examine the point. That properly we may do so is well within our pronouncements, cited and reviewed in many cases familiar to the profession. The most recent one, also a prosecution involving the earlier habitual criminal act, is *Smalley v. People,* 116 Colo. 598, 183 P. (2d) 558, where we said: "We are here confronted with patent errors disclosed by the record of which, notwithstanding the absence of assignment or argument, we are obliged, under previous rulings of this court, to take notice." So here, as likewise I believe. Incidentally, Mr. Chief Justice Burke, writing the opinion of the court in *Smalley v. People, supra,* and citing *O'Day v. People,* 114 Colo. 373, 166 P. (2d) 789, added the following sobering thought: "We cannot close our eyes to the fact that this statute is drastically in derogation of the common law and hence by ancient and applicable rule must be strictly construed. It is no light thing to double and treble the maximum sentence of the criminal law, to say nothing of relegating a malefactor to a life of penal servitude. * * * All which, buttressed by our former decisions, obliges us to insist upon a strict compliance with this habitual criminal statute."

My research leads to the conclusion, that evidence of former convictions, in the circumstances here, not only is neither competent nor relevant on the charge of the substantive crime involved in the first count of the information, but that any reference thereto in the presence of the jury while the question of the guilt of defendant on the first charge remains undetermined, is not permissible. If on that count there is acquittal, as already I have emphasized, the case is concluded; but if there shall be conviction thereon, as here, the charge of defendant's previous convictions becomes immediately triable, and to the same jury, without being resworn, as the authorities say. At that point, as the authorities

further hold, and not until then, may the jury be apprised of the incidental charge of previous convictions, and, unless the accused shall then plead guilty thereto, or submit that issue to the court without a jury, which the authorities say he may do, the jury "should be charged to inquire on that issue." The foregoing is indicative of what I think should be the procedure to be followed in prosecutions where the people are invoking the habitual criminal statute, as here. In fortification of my views, and for the edification of prosecuting officers in the premises, I now quote at length from a Connecticut case, where, proceeding exhaustively, the well acclaimed Supreme Court of Errors of that state outlined the rule in detail, and in an enlightened and compelling study stated the reasons therefor. The Connecticut Court said:

"Our Indeterminate Sentence statute (§6660) provides that when any person who is to be sentenced after conviction of crime 'shall have twice before been convicted, sentenced and imprisoned in a state prison or penitentiary, the court shall sentence said person to a maximum of thirty years.' Concerning this provision we said, in *State v. Reilly,* 94 Conn. 698, 703, 110 Atl. 550: 'Inasmuch as the maximum sentence for an offense is imperatively fixed by the statute, in case the defendant has been twice before convicted, sentenced and imprisoned, and this maximum exceeds the maximum in case of a first offense, it follows that if the State intends to make any claim to raise the penalty by reason of such prior conviction, the defendant should in the information be apprised of this additional element upon which such claim of the State is to be based. It is, accordingly, a uniform rule that such additional allegations relating to the penalty alone should be incorporated in the information'; and, after citing many authorities, we added, 'and so are the authorities generally.' Therefore, the trial court made no mistake in refusing to strike out of the

information in this case the statements relating to former convictions.

"But in *State v. Reilly,* 94 Conn. 698, 110 Atl. 550, we further said, on page 705, that in such an information 'two separate issues are presented: first, was the defendant guilty of the crime charged? This relates to the crime only. Second, if guilty, had the defendant twice before been convicted, sentenced and imprisoned? This relates to the penalty only, and does not involve or state any other or different crime from that first stated. The jury must by their verdict answer each of these issues.' This plainly indicates that the first issue should be taken up and tried by the jury separately; and, if the accused be found guilty on this issue, then the second issue should be tried; and, if the accused be found guilty on this issue also, then the maximum punishment prescribed by the statute must be the sentence of the court. It cannot be believed that an accused man would ever have a fair trial, resulting in a verdict not affected by prejudice or by considerations by which the jury should not be influenced, if, during that trial, allegations that he has twice before been convicted of State prison crimes have been read to the jury and evidence of his former convictions has been placed before them. It is beyond question that knowledge of such facts must necessarily prejudice the minds of his triers against the accused, * * *. No one would claim that in a trial for a specific crime evidence of another crime committed by the accused could be admitted for the purpose of proving his guilt of the crime alleged. The purpose of a criminal trial * * * is not more to punish the guilty than to discharge the innocent. Whatever may have been the previous offenses or the bad character of the accused, the law surrounds him with the presumption that he is innocent of the specific crime with which he is charged, and, while that presumption has no evidential force, it casts upon the State the burden of proving that the accused is guilty of that specific crime by evidence of

facts material and relevant to that crime. *State v. Smith,* 65 Conn. 283, 31 Atl. 206. Upon such evidence only, the jury are sworn to tender their verdict. A man is not to be convicted of one crime by proof that he is guilty of another. Therefore our law sedulously guards against the introduction of evidence of any matter immaterial or irrelevant to the single issue to be determined. The purpose of these salutary laws might often be defeated if the minds of the jurors were subjected to the influence of facts or considerations having no legitimate bearing on the only question they have to decide, and their verdict be reached under the impulse of passion, sympathy, or resentment. Such a verdict is illegal and will be set aside. * * * The rule everywhere enforced excludes not only evidence of another crime, but also evidence tending to degrade the accused, to prejudice the jury against him, to divert their minds from the real issue which they have to determine, or to persuade them by matters which they have no legal right to consider · that the accused, for reasons other than those based upon legitimate evidence, was more likely to have committed the particular crime for which he is on trial.

"As we said in *State v. Reilly,* 94 Conn. 698, 110 Atl. 550, such an information as this presents two separate issues, and the issue of former convictions does not relate to the issue of the commission of the specific crime alleged, and for which only the accused is to be tried; and the fact of former convictions does not tend in any way to prove the commission of the crime charged. It follows that, until the verdict of the jury on the principal issue has been rendered, no knowledge of the alleged previous convictions should reach them, either by reading that part of the information in which they are recited, or by evidence relating to them. If the verdict on the principal issue be guilty, then the second issue may be submitted to the jury.

" * * * The information should be divided into two parts. In the first part, the particular offense with which

the accused is charged should be set forth; and this should be upon the first page of the information and signed by the prosecuting officer. In the second part, former convictions should be alleged, and this should be upon the second page of the information, separable from the first page, and signed by the prosecuting officer. The entire information should be read to the accused and his plea taken in the absence of the jurors. When the jury has been impaneled and sworn, the clerk should read to them only that part of the information which sets forth the crime for which the accused is to be tried. The trial should then proceed in every respect as if there were no allegations of former convictions, of which no mention should be made in the evidence, or in the remarks of counsel, or in the charge of the court. When the jury retire to consider their verdict, only the first page of the information, on which the crime charged is set out, should be given to them. If they return a verdict of guilty, the second part of the information, in which former convictions are alleged, should be read to them without reswearing them, and they should be charged to inquire on that issue. Of course, the accused may plead guilty to this part of the information, and then no further proceedings before or by the jury would be necessary. No reason appears why the accused, if he should choose, might not submit this issue to the court without the jury.

"In this way the well-recognized rights of an accused person will be protected, and the principles of justice and our long-established laws, which have been designed to secure an impartial trial in every criminal cause, will be recognized, respected and obeyed." *State v. Ferrone,* 96 Conn. 160, 113 Atl. 452.

In a recent opinion by the Supreme Court of Utah, *State v. Stewart,* 110 Utah ......, 171 P. (2d) 383, it was said: "We are in accord with the procedure outlined in *State v. Ferrone, supra* [the Connecticut case from which we have quoted], * * * While safeguarding the rights of

the accused, such procedure does not offend any principle of orderly procedure nor tend to delay justice. In fact, it might well expedite justice, for if a defendant is acquitted on the substantive charge, there is no occasion to take time to present evidence of prior convictions. If the jury renders a verdict of guilty, then the second phase of the trial should be conducted before the same jury unless the defendant waives a jury trial on such matter. In the latter phase of the trial, the jury would merely make a finding by its verdict substantially as follows: 'We, the jurors impaneled in the above mentioned cause, find that the defendant has (or has not) been previously convicted for the crime (or crimes) specified in the information.' " See, also, *Wright v. People,* 116 Colo. 306, 181 P. (2d) 447, where Mr. Justice Hays, writing the opinion of the court, said: "The habitual criminal act did not create a new crime. It merely provided that the court, in sentencing a defendant after conviction, must consider former convictions in imposing sentence."

I am not unmindful, of course, of our decision in *People v. Wolff,* hereinbefore mentioned, which is cited by the Attorney General as supporting the action of the trial court in the present proceeding. There the charge of the substantive crime was tried to a jury without reference to the alleged previous convictions, and a verdict of guilty was returned. Two months subsequently, the secondary issue was tried to another jury, and again there was a verdict of guilty. Proceeding on the two verdicts, reached pursuant to trials in manner I have stated, the court imposed sentence in accordance with the habitual criminal statute. "The people assign as error," as we said there, "the order to separately state and the order discharging the first jury and submitting the question of prior convictions to a second jury." Another assignment by the people was, "That the trial court erred in discharging the jury after a verdict of guilty of burglary with force had been entered." In this

Wolff case we reversed the judgment, and in making disposition thereof, as the Attorney General emphasizes, we did say, that, "Under the circumstances the charge of former conviction could only be tried at the same time and to the same jury as the principal charge." In that case, however, as above stated, the court, on receipt of the verdict of guilty on the substantive charge, discharged the jury, and after elapse of a considerable period tried the former conviction charges to a second jury, which, as we announced, constituted an error of which "defendant was entitled to take advantage," a holding, as it is proper to mention, made on our own motion in the interest of justice. That case presented no question of commingling of evidence of the substantive charge and the allegations of previous convictions, as here. Saying that the two issues should be "tried at the same time and to the same jury," is not equivalent to saying that the district attorney, proceeding in chief, as here, properly may introduce evidence in support of both the disparate issues necessarily involved in prosecutions under the habitual criminal statute. Mr. Chief Justice Burke, author of the opinion in the Wolff case, believes the two cases are distinguishable, in that the language in the earlier case is not applicable to the controlling point here. Neither case was tried in accordance with what I believe the rule to be, the first one offending in one particular, the present one in another.

In all fairness, as I believe, the judgment should be reversed, and the cause remanded for a new trial.

Mr. Justice Alter and Mr. Justice Luxford concur in this dissenting opinion.