## No. 25607

**The People of the State of Colorado v. Leo Norman Yeager**

(513 P.2d 1057)

Decided September 10, 1973.

John P. Moore, Attorney General, John E. Bush, Deputy, David A. Sorenson, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Thomas M. Van Cleave III, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

Leo Norman Yeager, appellant here, defendant in the trial court, was convicted of theft. The appeal is based on the alleged error of the trial court in permitting the prosecution to elicit on cross-examination of the defendant the fact that he had two prior felony convictions, both of which occurred more than five years prior to trial. C.R.S. 1963, 154-1-1.

The defendant challenges C.R.S. 1963, 154-1-1 on two grounds. First, he contends that the act is unconstitutional in that the classification of witnesses by the type of action in which they testify constitutes a denial of equal protection of the law as to criminal defendants. He submits that the *equal protection* test applied by this court in *Lee v. People,* 170

Colo. 268, 460 P.2d 796 (1969) is not valid and should be overruled. Second, he argues for an interpretation of the language of the statute which would leave the matter of the admissibility of the prior conviction to the discretion of the trial court.

I.

The *equal protection* argument derives from the fact that the statute in question limits, for purpose of impeachment in civil actions, evidence of a conviction of a witness to those felonies occurring within five years of the time of his testifying, whereas, in criminal cases there is no time limitation. In *Lee,* Mr. Justice Pringle applied the conventional equal protection test which requires like treatment to all similarly situated, permits classification which is not arbitrary, and is based upon substantial differences having a reasonable relation to the objects or persons affected and to the public purpose sought to be achieved by the legislation.

This court has continuously adhered to *Lee. Velvarde v. People,* 179 Colo. 207, 500 P.2d 125 (1972); *Mays v. People,* 177 Colo. 92, 493 P.2d 4 (1972); *Taylor v. People,* 176 Colo. 316, 490 P.2d 292 (1971); *Garcia v. People,* 174 Colo. 372, 483 P.2d 1347 (1971); *Nunez v. People,* 173 Colo. 236, 477 P.2d 366 (1970). The defendant, however, contends that the *Lee* test is no longer valid, arguing that:

". . . the United States Supreme Court has held the traditional test insufficient and prescribed a stricter standard for those cases involving 'suspect classifications,' see, *e.g., Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817 (1967) (classification based on race); *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848 (1971) (classification based on alienage); or 'fundamental interests.' "

We do not accept the defendant's argument, believing as we do that, under the circumstances of this case, the traditional classification test does no violence to the constitutional rights of the defendant, nor is the statutory classification "suspect." We adhere to the soundness of this statement from *Lee:*

"It is certainly not unreasonable for the legislature to permit

a more searching inquiry into the credibility of witnesses in a criminal trial where the burden is on the People to prove the guilt of the defendant beyond a reasonable doubt."

## II.

The defendant bases his second argument that the trial court has discretion to suppress a witness's prior felony convictions on an interpretation of the statute. Section 154-1-1, in pertinent part, provides:

"[T]he conviction of any person for any felony *may* be shown for the purpose of affecting the credibility of such witness;" (Emphasis added.)

Yeager acknowledges that previous decisions of this court in applying this statute have not recognized discretionary power in the trial court as to the use of prior convictions for impeachment purposes. *See Candelaria v. People,* 177 Colo. 136, 493 P.2d 355 (1972); *Diaz v. People,* 161 Colo. 172, 420 P.2d 824 (1966); and *Bowland v. People,* 136 Colo. 57, 314 P.2d 685 (1957). Nevertheless, defendant urges this court to consider a construction of Section 154-1-1, holding that the word "may" makes the use of prior convictions for impeachment purposes discretionary with the trial court.

Defendant would have us adopt the reasoning of the United States Court of Appeals for the District of Columbia Circuit which in construing "may" in a similar statute, held that the use of prior convictions for the impeachment of witnesses is discretionary with the trial judge. *Luck v. United States,* 348 F.2d 763 (D.C. Cir. 1965). We are cognizant of the fact that Illinois, in *People v. Montgomery,* 47 Ill.2d 510, 268 N.E.2d 695 (1971), and a few other jurisdictions, have followed the *Luck* construction. The cases reaching the contrary result comport more closely with what we believe to be the intent of the Colorado Legislature. We are particularly impressed with the rationale of *State v. Hawthorne,* 49 N.J. 130, 228 A.2d 682 (1967)[1] hereafter discussed.

Bolstering our confidence in the correctness of our conclusion is the history of Section 154-1-1 relating to the

---

[1] See particularly the concurring opinion of Chief Justice Weintraub.

competency of witnesses to testify in civil and criminal proceedings. At common law and by prior statutory law,[2] Yeager would have been disqualified from testifying in his own behalf. It was not until 1883 that this disability was removed by statute. Colo. Sess. Laws of 1883, p. 289. In pertinent part the statute provided:

". . . Neither parties nor other persons who have an interest in the event of an action or proceeding shall be excluded; nor those who have been convicted of crime; . . . although in every case the credibility of the witness may be drawn in question, as now provided by law, but the conviction of any person for any crime, may be shown for the purpose of affecting the credibility of such witness; and the fact of such conviction may be proved like any other fact not of record; either by the witness himself (who shall be compelled to testify thereto), or by any other person cognizant of such conviction, as impeaching testimony or by any other competent testimony."

The act provided for specific exceptions, primarily privileged communications arising out of confidential relationships (husband-wife, attorney-client, clergyman-confesser, physician-patient). It is interesting to note, however, in another section of the same act, the legislature demonstrated that it knew how, if it so desired, to give the court discretion. The provision reads:

"5. A public officer shall not be examined as to communications made to him in official confidence, when the public interests, *in the judgment of the court,* would suffer by the disclosure." (Emphasis added.)

This law was unchanged until 1941 when it was amended to its present form, providing for the distinction between the use of prior convictions for impeachment purposes in criminal and civil cases. The amendment provides:

---

[2] Territorial Laws of Colorado; First Session, 1861, p. 333; This section may have been repealed in part by Territorial Laws of Colorado, Ninth Session, 1872, p. 95. However, this section did not address the issue of prior convictions or their use for impeachment purposes. This section was modified by Colo. Session Laws of 1881, p. 114.

". . . evidence of a previous conviction of a felony where the witness testifying wàs convicted five years prior to the time when the witness testifies shall not be admissible in evidence in any *civil* action." (Emphasis added.)

In 1941 the General Àssembly had the matter of prior convictions specifically before it. In considering one of the elements — remoteness — (considered to be vital in *Luck* and *Montgomery*) the legislature limited the use of prior felony convictions for impeachment purposes to those occurring within five years prior to the witness's testimony in *civil* cases, but left unchanged the unlimited time applying to the use of prior convictions of witnesses testifying in *criminal* cases. In the period between 1883 and 1941 the question of whether the use of prior felony convictions was mandatory or discretionary does not appear to have been drawn in question. Nor are we aware of any challenges on this basis from 1941 to the present time. *Velvarde v. People, supra; Garcia v. People, supra; Nunez v. People, supra; Lacey v. People,* 166 Colo. 152, 442 P.2d 402 (1968); *Diaz v. People, supra; Routa v. People,* 117 Colo. 564, 192 P.2d 436 (1948); *Dockerty v. People,* 96 Colo. 338, 44 P.2d 1013 (1935); *Hendricks v. People,* 78 Colo. 264, 241 P. 734 (1925); *Dively v. People,* 74 Colo. 268, 220 P. 991 (1923); *Tarling v. People,* 69 Colo. 477, 194 P. 939 (1921); *Dennison v. People,* 65 Colo. 15, 174 P. 595 (1918); and *Solander v. People,* 2 Colo. 48 (1873).

The practice of leaving to the attorney representing the adverse party the discretion of using prior felony convictions to impeach a witness was universally followed, according to the reported decisions. The General Assembly met at least biennially in the interim without making any changes in the law, except for the 5-year limitation in civil cases already noted. This legislative acquiescence over a period of ninety years is rather strong evidence that the courts were applying the statute in a manner consistent with the legislative intent.

The statute discussed in *State v. Hawthorne, supra,* is substantially the same as Section 154-1-1. In the New Jersey case the trial judge concluded that the criminal convictions,

the last one being about nine years prior to the criminal act pending trial, were too remote and therefore ought to be excluded at the trial because their potential for prejudice to Hawthorne would be disproportionate to their probative value in impeaching his credibility.

The trial judge relied upon *Luck v. United States, supra,* as does the defendant here, in concluding that "may" gave the trial court discretionary power to admit or exclude evidence of prior convictions for testing credibility. This is what the New Jersey Supreme Court said in disposing of this argument:

". . . In the context 'may' connotes an authorization, a grant of permission to the parties to civil or criminal actions to show the witness's previous criminal conviction by testimonial examination or by production of the record. Plainly the option was intended to be given to the State and the defendant in a criminal case, and the plaintiff and defendant in a civil case. No time limit was imposed upon admissibility. There is simply the flat and unrestricted statement that the conviction of crime may be shown to affect credibility. The authorization represented a policy decision by the Legislature, and established, as a matter of law, the admissibility of a conviction without regard to time interval between the conviction and the person's appearance as a witness. Thus, the 'may' in the statute does not bespeak a grant of permission or discretion to the trial judge to receive or reject the proof. On the contrary, the parties are invested with the option and if it is exercised the examination must be allowed or the record of conviction received when offered."

We hold to the view that a previous felony conviction of a witness, whatever its age, may be shown to affect credibility. In the present state of the law the effect on credibility of a "remote" conviction must be left to the judgment of the jury.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE ERICKSON do not participate.