## No. 13,557.

DOCKERTY ET AL. *v.* THE PEOPLE.

(44 P. [2d] 1013)

Decided March 4, 1935.

Mr. O. OTTO MOORE, for plaintiffs in error.

Mr. PAUL P. PROSSER, Attorney General, Mr. WALTER F. SCHERER, Assistant, for the people.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

Plaintiffs in error were defendants below and will be so referred to in this opinion. They were convicted of aggravated robbery, and bring the case here on writ of error.

The facts as claimed by the people are briefly as follows: The automobile of C. W. Savery, a Denver business man, was stopped on a Denver street by an automobile driven in its path. The defendant Lombardi and one Melvin Benien appeared on opposite sides of Savery's automobile, thrust pistols at Savery and ordered him from the car. As Savery alighted he was struck on the head by one of the holdups, whose gun was fired during the altercation. Lombardi and Benien drove away in the victim's car, pursued by a bystander. They later abandoned the car after taking a money bag containing $697, together with other small articles. Benien turned state's evidence, and testified that the defendant Dockerty was a participant in the plans for the robbery, and drove the car which blocked off Savery's auto. Benien further testified to Lombardi's active participation. Savery identified Lombardi as one of the men who held him up with a gun. Dave Chuven, a police officer, testified to investigations made after the robbery, and to the recovery of some tennis balls which also were taken in the holdup.

The defendants made a complete denial of the charges and facts as claimed by the people and attempted to show that they were a "frame up" of the witness Benien actuated by his feeling of hostility toward defendants and his desire to secure a parole, which defendants endeavored to show he had been promised by the police officers if he would testify against defendants. At the time of trial Benien had plead guilty but had not been sentenced.

The defendants assign various errors in the admission of testimony by the trial court. A number of

assignments relate to the court's refusal to admit certain testimony which defendants claim was admissible to impeach and discredit the testimony of Benien by showing hostility toward defendants and a selfish motive to convict defendants to obtain a parole for himself. To do this defendants proposed to show that Benien had written to two different parties outside of the jail to bring in saws so he could saw out of jail. Benien was asked if he did write such notes and he denied doing so. He admitted that a fellow prisoner, Armstrong, offered to bring saws in, and later admitted that a note to one Ness, requesting that Ness bring saws in to him, was in his handwriting. The court refused, on objection, to permit further testimony concerning the note, but witness being asked without objection if he knew Dockerty was in trouble in jail and accused of trying to get saw blades in, answered that he had heard nothing about it. He stated also that he had given no information that Dockerty was trying to saw out of jail. Defendants offered to show that Dockerty got the blame for trying to get the saws in, thus, as counsel says in his brief, "showing a motive on the part of Benien to blame Dockerty with things he had nothing whatever to do with." Dockerty was on the stand, but was not asked in regard to any trouble that he had about saws while in jail, and counsel for defendants never offered to show that Benien falsely accused Dockerty of it.

The fact that an attempt was made by Benien to have saws brought in, is not of itself material; neither is it material that Dockerty got the blame for it. These facts could become material only if it were shown or proposed to be shown that Benien took part in throwing blame on Dockerty for his, Benien's, act, and we can find nothing in the record that shows, or any offer to show, this fact. On the record as it stands, with no offer to show, and no evidence tending to show, that Benien cast blame on Dockerty for bringing in saws, when in fact the act was one for which he himself was responsible, the rulings of

the court were proper and were merely the exclusion of immaterial testimony.

 Defendants assign error on the court's refusal to permit certain questions to be asked of defendant's witness Armstrong. On cross-examination Benien was asked if he did not tell one Armstrong that he believed the police were going to double cross him on their promise to give him a parole. He answered that there was nothing of that kind said. He was then asked if he did not go further and say that since he believed they were going to double cross him he was going to grab a detective's gun in court and make a getaway. He denied that anything of that sort was said. These were impeaching questions. They were proper because the promise of immunity, if one has been made, or the expectation of leniency, if no promise has been made, are facts to be considered as bearing on Benien's credibility as a witness. The ultimate relevant fact to be determined is the state of mind of the witness, whether he did or did not believe that by testifying against defendants he would further his own interests and get a lesser punishment. It was proper to ask the witness Armstrong the impeaching questions, but they should have been framed in the same, or substantially the same, form as they were asked of Benien when the foundation for impeachment was laid. A formal impeaching question is necessarily a leading question. The questions were not propounded to Armstrong in the same form they were asked of Benien. Those asked Benien contained nothing about testifying against defendants as a condition of getting a parole. The questions went merely to the matter of Benien being promised, and his expectancy of a parole. That Benien was to testify against defendants as a condition of getting a parole was a matter injected into the questions for the first time when Armstrong was being interrogated as a witness. The question asked of Armstrong was not proper for this reason, though not objected to on that ground. On general questions Armstrong was permitted

to state, and did state, that Benien told him he was promised a parole for pleading guilty and that he was afraid the detectives "were not going through with it." On the foundation for the impeaching questions as laid, defendants obtained from Armstrong all they were entitled to receive by his answers to general questions. Defendants therefore were not prejudiced by the court's refusal to permit the questions to be put in the usual form. The matter of "grabbing a gun" in the court room was no doubt practically important to the defendants for such prejudicial effect as it might have on Benien's testimony before the jury, but legally it was, and could be, relevant and admissible only as an incident by which to call the witness' attention to the occasion on which the statements with regard to promised immunity or leniency were made. It was not error to refuse permission to question the witness Armstrong concerning this incident.

Defendants attempted to show that the detectives refused to let anyone talk to Benien while in the county jail. This interrogation, counsel says, should have been permitted as bearing on the credibility of the officers testifying. It will be noted that the question asked was not whether the officers testifying had made such order, but whether the detective bureau had done so. The fact sought to be elicited by the question involving the actions of others than the two officers who were witnesses, could not have a bearing on the credibility of their testimony. The objection to the question was properly sustained.

Defendants complain that prejudicial hearsay testimony was admitted over objection. The witness Chuven was questioned at some length regarding favoritism and privileges extended to Benien while he was in jail and particularly as to taking him out riding. The evident purpose of this was to show pressure was being exerted on Benien to make his testimony favorable to the prosecution. On redirect examination the district attorney asked in some detail what was done on these trips and the witness Chuven said they went over the route

followed in the robbery and flight; that the witness showed them different places; how they zigzagged around to get away; and where they threw the tennis balls that were taken from Severy's car. When asked what place he showed them as the one to which the tennis balls were thrown, the answer was: "It was in the alley right off of Umatilla and Wyandotte there, where they parked the car, where they went through the yard, and where they met Dockerty in his car." Defendants moved to strike the answer. Certainly the first part as to the street location was proper. This place had already been identified as the one where Dockerty was met by the witness Benien. The witness Chuven was not asked how he knew the car was parked there or how he knew that it was the place where Benien and Lombardi met Dockerty. Counsel for defendants merely assumed he had no personal knowledge of what he testified to. If he had been asked if he knew the facts of his personal knowledge, and if any part of the answer had been shown to be hearsay, a motion to strike such part probably then would have been granted. The other testimony objected to does not go further than a general statement that witness showed them how he did certain things and the general character of the route he took after the robbery, without stating to the jury definitely what the things were that he did or what the route was that he followed. The court did not let the prosecution go beyond the limits of a reasonable redirect examination.

 Defendants strenuously urge that it was error to permit the asking of two questions—one of the witness Smith, a defense witness, who testified on direct examination to a conversation that he, while acting as prison barber, had with the witness Benien. Among other questions asked him by counsel for the defense were the following: "Q. I will ask you to state whether or not you had any conversation with Melvin Benien? A. Yes, sir. Q. In the course of that conversation I will ask you whether or not Melvin Benien stated in substance to you

that a man named Gadeo wanted Benien to bring John Dockerty to him for some fake holdup, and that Dockerty was to be shot? A. Yes, sir. Q. He told you that, did he? A. Yes, sir.'' On cross-examination the district attorney asked: ''You say that Benien told you that Gadeo was to have Benien put Dockerty on the spot? A. Words similar to that, yes, sir. Q. Now, as a matter of fact, isn't this what he said: that he and Gadeo were going to highjack the money from Dockerty that Dockerty had gotten from sticking up the United States National Bank messenger? A. It is not. Q. Isn't that the fact? A. No, sir, it is not. Q. Did you have any conversation about that? A. Not about that money, no, sir.''

It will be observed that counsel for the defendant brought out the conversation between Smith and Benien, presumably to show Benien's hostility toward Dockerty. If the testimony as to the conversation and what was said concerning Dockerty was competent, and the defendants, having offered it, should be held to have vouched for its competency, then there is no valid reason why the people should not be permitted by cross-examination or direct testimony in rebuttal to show that the conversation was other than as related by the witness. If it appeared on cross-examination or from other rebuttal testimony that the conversation related to another supposed crime of the defendants, or one of them, that is his misfortune and a burden defendants should carry, having introduced evidence of the conversation in the first instance. One who seeks the benefit of a conversation that has not been recorded so as to be capable of exact proof, but rests on the faulty impressions and the fallible recollection of witnesses, should bear also any burden that may fall upon him by relevant cross-examination or testimony of others in rebuttal whose impressions and recollections may vary greatly from the testimony of his own witness. Defendants did not object at the time to the district attorney asking if the conversation was not different from

that to which the witness had testified, and not having objected, they cannot here be heard to complain that such testimony was given.

The other question, the asking of which defendants urge was error, was directed to the people's rebuttal witness Cain, to whom the following question was put on direct examination: "I will ask you to state whether or not he [Smith] offered to turn valuable information to the district attorney concerning Lombardi and Dockerty, as to the robbing of the United States National Bank messenger, if he could get something in return?" This question was objected to by the attorney for the defendants and the objection was sustained. There was no request to instruct the jury to disregard what counsel says is an innuendo contained in the question. In view of the fact that this reference to the holdup of the United States National Bank messenger had already been mentioned in the presence of the jury on proper cross-examination, and without objection from the defendants, even though it may have been error to ask the question of the witness Cain as an attempt to impeach the witness Smith on an immaterial matter, which was one ground of the defendants' objection, nevertheless, we think under the circumstances the error was not prejudicial.

The district attorney on cross-examination of Dockerty inquired as to Dockerty's acquaintance with Benien, and Dockerty stated that he was not very well acquainted with him and never went any place with him. The district attorney then asked, without objection from the defendant, if it were not a fact that Dockerty and Benien had together held up Haelscher, who was present in court and who was pointed out to Dockerty. Haelscher was called as a witness by the people in rebuttal and testified that he was held up on the 15th day of July of the preceding year by two persons whom he identified as Benien and the defendant Dockerty. He pointed out the defendant Dockerty in the court room as one of the men who held him up. This testimony was offered by the dis-

trict attorney to rebut the statements of Dockerty that he was not very well acquainted with the witness Benien and never went any place with him. The court, in ruling on the objection to the testimony of Haelscher offered on rebuttal, stated that it was admissible in rebuttal of Dockerty's testimony, and in this the court was correct. The court stated further that it was admissible to show intent, plan, design or system. In the court's instructions to the jury no instruction was given and none was requested by the defendants to the effect that said testimony should be considered as rebuttal testimony, and for no other purpose. The court did give, without objection, an instruction that such evidence is admissible "only as bearing upon the question of whether or not the defendants had a plan or design to produce a result of which the act charged in the information was a part," and further instructed the jury that they could consider such evidence for no other purpose; that the defendants could not be tried for or convicted of any offense other than that charged in the information. Defendants cannot complain of any error of the trial court that has not been saved in the record by timely objection or request for proper limitation. In the case of *Cargill v. People,* 73 Colo. 218, 214 Pac. 387, it was held, under the disclosed facts, that evidence of a former offense was not admissible for any purpose. In that case there was an objection to the evidence and motion made to strike it. Counsel at all times preserved their record. If counsel in this case had tendered an instruction limiting the testimony to rebuttal of the claim that defendants Benien and Dockerty were not acquainted prior to the robbery, or if they had objected to the instruction given, another question would be before us which in the present state of the record we need not and do not determine.

It is further assigned as error that the court, over objection, permitted the people on cross-examination of the defendant Dockerty, to show that he had made a down payment of $1,500 on a house; but we think that

where a man is charged with unlawfully securing money, it may be shown that at or about the time the money is alleged to have been unlawfully secured, the defendant had money in his possession; and that it is not necessary, where money is involved, to show that it was the specific money that had been stolen or unlawfully secured.

We think there was no error in the trial court's denial of defendants' motion in arrest of judgment and supplemental motion for a new trial filed after the term in which sentence was pronounced had expired. These were based on the affidavit of Benien that he had falsely testified as to the defendants' participation in the holdup; that he had given such testimony on the solicitation of two police officers; and because they had told him that if he did not give this false testimony they would frame the witness.

We might rest our decision of this question on the ground alone that the supplemental motion for new trial and motion in arrest of judgment were filed too late under our holding in the case of *Saleen v. People*, 41 Colo. 317, 320, 92 Pac. 731, that, ''When the court adjourned for the term, after the sentence was imposed, it lost all jurisdiction * * * of the cause.'' But we think that the decision of this court in the case of *Blass v. People*, 79 Colo. 555, 247 Pac. 177, which involved a discussion of recanting testimony, is here applicable and that aside from any question of procedure this case falls within the principles therein announced.

The defendants assign error on the giving of the court's instruction No. 15, which was the usual and ordinary instruction regarding flight. Defendant Lombardi left Denver a little more than one month after the alleged date of the commission of the crime, and went to Kansas City, Baltimore and Chicago, using two different aliases while on the trip. He was arrested in Kansas City in November and returned to Denver from that place. This appears from his own testimony. The jury were told that flight was merely a circumstance competent for them

to consider, and that they were also to determine whether such flight was caused by a consciousness of guilt or by some other and innocent motive. It was competent to show the fact that Lombardi left Denver within a time after the crime was committed, such that it might reasonably be inferred that he was leaving because of a consciousness of guilt. The weight to be given to the circumstance of his leaving would depend on whether defendant left because of the crime or for some other reason, and of this the jury were to be the judges under proper instructions. The instructions of the trial court we think stated the law applicable to the situation.

 Error is assigned on the admission of proof on cross-examination of defendant Dockerty that he had been convicted of criminal contempt of court. On cross-examination, after the defendant had stated that he was convicted of bootlegging in 1922, the illegal sale of liquor in 1929 and of vagrancy, he was asked the further question: "Weren't you convicted of criminal contempt downstairs before Judge Bock for beating up a witness who testified in a case in that division?" After objection and argument, the objection being overruled, the question was asked in this form: "Were you not convicted of criminal contempt, I think it was during the month of December, for assaulting a witness who testified in a case in court here and sentenced to six months in the county jail and are now serving that sentence? Is that right? Before Judge Bock downstairs?" "A. I was convicted. It was not for anybody testifying." On the record the question is squarely presented, whether or not section 6555 of the Compiled Laws of 1921, providing that a defendant who takes the stand may have his credibility attacked by showing a former conviction of a crime, includes a criminal contempt.

It has been rightly held by the Court of Appeals of this state in *Denver Jobbers Association v. People*, 21 Colo. App. 326, 122 Pac. 404, that a crime at common law which was a crime in England prior to 1607 under the

common law as it then existed, and as we adopted it, is a crime in Colorado since our adoption of the common law as it existed prior to 1607. (Section 6516 Compiled Laws of 1921). If, then, a criminal contempt of court constituted a crime at common law, it would logically follow that one who has been guilty of a criminal contempt in Colorado might be asked that question to test his credibility when he takes the witness stand in his own behalf. In Blackstone's Commentaries, book 4, chapter 9, page 124, it is said: "Contempt against the king's palaces or courts of justice have always been looked upon as high misprisions: and by the antient law, before the conquest, fighting in the king's palace, or before the king's judges, was punished with death." The same writer—book 4, chapter 20, at page 287—in speaking of the trial of contempt by the court, says: "It cannot have escaped the attention of the reader, that this method, of making the defendant answer upon oath to a criminal charge, is not agreeable to the genius of the common law in any other instance." The Supreme Court of the United States in *New Orleans v. Steamship Company*, 20 Wallace 387, 392, says: "The questions presented for our consideration are questions of law. The facts are undisputed. Our remarks will be confined to the several objections to the decree taken by the counsel for the appellant.

"The fine of three hundred dollars imposed upon the mayor is beyond our jurisdiction. Contempt of court is a specific criminal offense. The imposition of the fine was a judgment in a criminal case. That part of the decree is as distinct from the residue as if it were a judgment upon an indictment for perjury committed in a deposition read at the hearing."

This court in *Teller v. People*, 7 Colo. 451, 4 Pac. 48, used the following language: "* * * the imposition of fines and penalties in contempt proceedings pertains to criminal, and not civil jurisprudence.

"In our judgment the proceedings in cases of this character partake sufficiently of the nature of criminal

actions to warrant us in holding that they must be reviewed as such. * * *''

From the foregoing, we hold, that inasmuch as criminal contempts at common law were regarded as crimes and were punishable either summarily or by indictment, then a criminal contempt is such a crime as may be shown on cross-examination under our statute, to impeach the credibility of a defendant who takes the stand in his own behalf.

 Counsel assigns error on what he denominates the prejudicial conduct of the trial court. The record shows that during the course of the argument the following occurred: "Mr. Moore: We desire to object to the statement of the District Attorney, to the effect that the witness Armstrong did not deny overhearing the statements attributed to Dockerty to Armstrong regarding this— The Court: Well, you have had a full chance to state your side of the case. Now, suppose you allow the prosecution to make their argument without interruption. I listened to you for an hour here. Mr. Moore: Note my exception to the ruling of the court." We are not advised from the foregoing, by affidavit or otherwise, of what the alleged improper statement of the district attorney was. We cannot say in the absence of such showing that the error was prejudicial. The remark of the court was improper and uncalled for so far as the record discloses. We are aware that during the course of a trial many objections are made by counsel that are without merit and sometimes apparently made for the purpose of distracting attention from a proper argument. Courts are often annoyed by such objections, but ordinarily it is better to allow in the record objections that are without merit, than to give the appearance to the record when it is read apart from the setting in which it came into being, that a party was not permitted the fullest opportunity to protect his rights.

The many other assignments of error we do not think well taken and do not consider them.

The judgment is affirmed.

MR. JUSTICE HILLIARD and MR. JUSTICE BOUCK dissent.