## No. 15,375.

### TRUJILLO *v*. THE PEOPLE.
(146 P. [2d] 896)

Decided January 31, 1944.   Rehearing denied March 13, 1944.

Mr. F. W. HARDING, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-ENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error (20 years of age at the time of the trial) is hereinafter referred to as defendant and the prosecuting witness as Carlson.

Defendant was convicted of simple robbery and sentenced to a term of four to five years in the penitentiary. To review that judgment he prosecutes this writ and asks that it be made a supersedeas. The attorney general closes his answer brief with the request that we deny the supersedeas "and forthwith affirm the judgment;" while defendant's counsel closes his reply with the request "that the judgment of the lower court be reversed." These statements we construe as a joint request for final judgment on the application, hence elect so to proceed.

Five errors assigned may be thus briefly stated: 1. Denial of permission to properly examine jurors; 2. erroneous admission of evidence of identification; 3. insufficient evidence to support the judgment; 4. denial of defendant's motion for new trial on the ground of newly discovered evidence.

1. There is no record of the examination of jurors on voir dire and if we were at liberty to accept the

naked statement of counsel's brief as to the interrogatory propounded and excluded we would be obliged to approve the ruling because of the confusing indefiniteness of the question.

■■ 2. A police officer testified that he exhibited to Carlson approximately two hundred photographs of "rollers" in the police files, from which he selected and identified that of defendant as one of the men who robbed him. Since "roller" is a term applied by the police to those who commit robbery in the manner here charged its use in this connection is complained of as highly prejudicial to defendant. But the prosecuting witness was "rolled" and the officer only designated the general class of the pictures. He made no charge that defendant did the rolling, and since no objection was made at the time, the assignment is without merit.

■■ 3. This assignment calls for a brief statement of the facts.

In the late evening of May 1, 1942, Carlson, with crippled hands, lame from a recent toe amputation, and somewhat the worse for intoxicating liquor, was "bumped into" by two "Spanish-American boys" as he was emerging from the lavatory of a Denver pool hall. An argument ensued during which the two above referred to were joined by two others of the same class. One was definitely identified by Carlson as the defendant. One of the quartet offered to fight Carlson who pleaded his incapacity and by way of compromise bought drinks for the group. About that time he lost consciousness. When he recovered he was being taken from an automobile near Sloan's Lake on the outskirts of Denver. Some men were about him and talked of throwing him into the lake. It was suggested by one of them that that would be murder. Eventually they departed. Carlson again lost consciousness and when he sufficiently recovered to attempt to leave the place he found himself minus shoes, keys, pocketbook and contents, and his watch. His head and face were so

badly beaten that the witness who picked him up and took him to a hospital described it as "pounded until, I would say, his nose was just flush with the outside of his cheeks. He was swollen that bad; his lips were just blood; he was blood all over. You couldn't tell anything about him at all." Three stitches had to be taken near his eye, three in his lip and two in his cheek. The defendant pawned Carlson's watch in Denver October 26, 1942, just before entering the navy. In that service he was taken to San Diego, California, from whence, out on an overnight pass, he returned to Denver without permission and was arrested here February 15, 1943. His defense was an alibi supported by his mother and the girl in whose company he claimed to be. He says he bought defendant's watch from his brother George. The latter (19 years old at the time of the trial) was jointly charged with defendant, entered a plea of guilty, and testified for his brother. He admitted that four men, of whom he was one, took Carlson from the pool hall to Sloan's Lake in an automobile belonging to one of them and there robbed him. He denies that defendant was one of the perpetrators, was ever present, or in any way connected with the crime. Further his story is that after the group left the pool hall they picked up two girls and did some considerable driving and drinking; that at the lake one of the girls, overcome by drink, required attention and while he was at some distance attending to her "the other guys" rolled Carlson; that the two girls and two of the boys were strangers to him; and that he sold the watch to defendant as the latter claims. The two brothers were taken into custody at the same time and admit that they then "fought it out" with the police.

Under this state of facts lack of evidence is based upon the following contentions: Defendant established an alibi; there is no evidence of the use of force in the perpetration of the theft; there is no definite evidence of when the property was taken; there is no evidence that

the defendant was present at the time of the commission of the crime or aided or abetted it, and that he was not properly identified.

Defendant's proof of his alibi is so weak as to be almost nil. It rests upon the assertions of himself, his mother and the girl, that for a certain period, including the day and hour of the commission of the crime, he was calling upon the young lady. Their knowledge of that fact they tie to their further allegation that he was so engaged at that particular time every day for a period of some two weeks, including the questioned date. The mother knew only that he left home on that mission. He and the girl both admitted that his custom in that regard did not extend to every evening of the period and they were otherwise unable to identify the particular date. Moreover, the jurors elected to believe from other competent evidence, hereinafter referred to, that defendant participated in the robbery. If so, they were well within their province when they discarded his evidence of alibi. *Smith v. People,* 39 Colo. 202, 88 Pac. 1072.

The contention that there was no evidence of the use of force in the perpetration of the theft is unworthy of consideration in the light of the undisputed testimony as to his condition when the malefactors left him, and the same is true of the contention that there was no sufficient evidence as to when his property was taken. 68 L.R.A. 33, 70; *Bloomer v. People,* 1 Abb. App. Dec. 146.

The claim of failure of identification is tied solely to Carlson's inspection of the photograph at the police department, but that identification was merely for the purpose of enabling the officers to locate a suspect. He was not thus identified on the trial, he was there in person and was there identified by Carlson. He had also been so identified following his arrest.

It is earnestly contended that since Carlson's sole identification of defendant as one of the perpetrators

was confined to a time prior to leaving the pool hall the allegation of his participation in the crime is wholly unsupported. This argument either proceeds upon the theory that such evidence must be produced by the people, or counsel overlooked the most vital link in the case. Carlson positively identified defendant as one of the four who accosted him and drank with him in that vicinity, and defendant's brother George says definitely that the four men who did so were the ones who took him in an automobile to Sloan's Lake where three of them (excluding George) committed the offense charged. If the jury accepted Carlson's identification, and that portion of George's testimony, as was their clear right and apparent conclusion, the perpetration of the crime is thus irrevocably fastened on defendant.

4. It appears from the brief of counsel that the newly discovered evidence upon which defendant sought a new trial was the discovery that the photograph which Carlson identified at the police department was one taken some six years before the trial, hence, it is said, the evidence "upon which the state relied for identification" was improper. But as above stated the people did not so rely. Moreover, it often happens that a picture of a boy at the age of fourteen will easily identify him at the age of twenty. The picture was not introduced in evidence and no call was made for it. The motion for a new trial was not verified and we have no information as to the age of the picture and its materiality save the simple allegation of the motion. The assignment is not well taken.

It may be added that there was no objection to any instruction given or refused and that our holding as to the examination of jurors, the identification of the photograph, and two or three similar questions which we have found it unnecessary to discuss, rests upon the rule invariably recognized, that assignments which have no basis in the record will be disregarded. *Goldberger v. People*, 45 Colo. 327, 332, 101 Pac. 407; *Moffitt v.*

*People,* 59 Colo. 406, 414, 149 Pac. 104; *Henry v. People,* 72 Colo. 5, 209 Pac. 511.

The judgment is accordingly affirmed.