[Civ. No. 17409. Second Dist., Div. Two. Mar. 13, 1950.]

THURSA FUGL, as Executrix, etc., Respondent, v. ROBERT EDWARDS, Appellant.

Halverson & Halverson for Appellant.

E. C. Pyle for Respondent.

WILSON, J.—Defendant has appealed from a judgment quieting plaintiff's title to real property.

The court found that decedent Knouse was at the time of his death and for a long time prior thereto had been the owner in fee and entitled to the possession of the property and that it was a part of his estate; that for more than 14 years, and for as much as five years in the aggregate and continuously prior to his death, he had been in actual occupation and in adverse possession of the property and had held possession of it under a claim of right hostile to the claim of defendant; that the latter had never been the owner of the property or in possession actually or constructively or entitled to possession thereof; that defendant's defense to the action is barred by section 319 of the Code of Civil Procedure; that a deed to the property wherein defendant was named as grantee was never delivered to him or to anyone in his behalf.

The facts as shown by the evidence are as follows: In 1927, one Davis and wife executed a trust deed of the property to a trustee in which decedent was named as beneficiary securing

a promissory note for the sum of $3,500; in October, 1933, Davis and wife, in consideration of $100 paid by decedent, executed a grant deed to the property in favor of defendant Edwards, the deed reciting that the property was subject to a trust deed which defendant assumed and agreed to pay. When the deed was recorded in the office of the county recorder in December, 1933, it bore a notation on the back thereof "When recorded please mail to Q. A. Knouse, 2034-8th Avenue, Los Angeles, Calif."—this having been decedent's residence at the time. The deed was presented to Davis by decedent for signature and after it was signed by Davis and wife it was delivered to decedent, who, as a notary public, certified to the acknowledgment thereof by the grantors. Davis and wife vacated the property in November, 1933, shortly after the execution of the deed. The document was found among decedent's papers in his home in a box where he kept all the deeds to his various properties. The blanks in the deed and in the acknowledgment were all filled in the handwriting of the decedent.

Defendant testified that he never saw the deed until after the death of decedent; he never paid the trust deed referred to in the deed; he knew nothing about the trust deed or the amount secured thereby and did not know the name of the beneficiary.

After Davis and wife vacated the property decedent rented it to some unknown person until September, 1935, when he rented it to one Harder. The latter occupied the property and paid rent therefor to decedent during his lifetime and continued to occupy it until the date of the trial of the action, paying rent to the executors. Decedent paid all taxes levied and assessed against the property after the execution of the Davis deed in 1933. Decedent never told Harder that anyone else had an interest in the property and no one made any demand for rent except decedent.

Decedent owned about 55 or 60 rental properties. A witness testified that he had been employed by decedent for eight or ten years to do carpentering, painting, plumbing and other work to keep the properties in repair, including the property in question in this action.

Defendant testified that beginning about 1933 and continuing until 1941 he signed various documents in blank, some of which were found among the private papers of decedent, consisting of several blank deeds, a general power of attorney, statements of identity, requests for full reconveyance, and

releases of mortgage. All such documents, defendant testified, were signed at the home of decedent at the latter's request and were left with him. Defendant understood the nature of the documents which he signed.

Prior to decedent's death defendant did not know the location of the property or its value, never collected any rent from it or exercised control over it, did no repair work, and never paid any taxes. A deed naming defendant as grantee covering other property than that here involved, reciting a consideration of $300, was introduced. Defendant never had seen the deed, never requested the recording of it, and did not pay any consideration therefor. A grant deed executed by defendant conveying the same property was introduced bearing revenue stamps representing a consideration of $3,200. Defendant did not receive any sum of money for the execution of the deed, never had possession of the property and did not know where it was located. Decedent, as notary public, certified to the acknowledgment of both deeds above mentioned.

It appears from the evidence that decedent was using defendant's name for the purpose of carrying on his real estate transactions on his own behalf and that defendant had no interest in or knowledge of any of decedent's business.

Defendant testified that at various times he had given some of his earnings to decedent for investment but did not remember the amount, whether $600 or $900. He never demanded a return of the money or interest upon it. In November, 1934, decedent gave defendant three separate checks aggregating $100, but defendant was unable to explain why the checks were given to him. In a feeble attempt to make it appear that decedent promised to make a gift of some sort to defendant he testified decedent said ''I am not forgetting you son . . . Don't worry, I will take care of you, you will be taken care of.'' Decedent did not mention any property or indicate he would leave any property to defendant. The latter did not file a claim with the executors for payment of any sums which he asserted he had left with decedent.

Evidence of declarations of a deceased person has been characterized as the weakest kind of evidence that may be produced. (*Cox* v. *Schnerr*, 172 Cal. 371, 379 [156 P. 509].) Such evidence is unsatisfactory ''on account of the facility with which it may be fabricated and the impossibility, gener-

ally, of contradicting it when false." (*Davis* v. *Davis,* 26 Cal. 23, 44 [85 Am.Dec. 157].)

The evidence is sufficient to establish all five elements denominated in *West* v. *Evans,* 29 Cal.2d 414, 417 [175 P.2d 219], and *Ortiz* v. *Pacific States Properties, ante,* p. 34 [215 P.2d 514, as necessary to establish title by adverse possession:

■ 1. Decedent was in actual occupation of the property through his tenants continuously after November, 1933, under such circumstances as to constitute reasonable notice to defendant. Personal occupation is not required since possession by a tenant inures to the benefit of one claiming by adverse possession. (*Kellogg* v. *Huffman,* 137 Cal.App. 278, 284 [30 P.2d 593].)

■ 2. Decedent's possession was hostile to defendant and to all other persons. Defendant knew that titles were being placed of record in his name, that he was not paying taxes or collecting rents. He acquiesced in the use of deeds which he had signed in blank for the purpose of conveying property taken in his name. He never made demand for possession of the property or for an accounting of the rents or for the sale prices of property which had been placed in his name. Hostile possession does not mean that the parties must have a dispute concerning the title or that there must be combat or open aggression, but that the hostile claimant's possession must be adverse to the record owner unaccompanied by any recognition of the latter's rights, either express or inferable. (*Sorensen* v. *Costa,* 32 Cal.2d 453, 459 [196 P.2d 900]; Ortiz case, *supra.*)

■ 3. Decedent claimed the property as his own under a claim of right. He never informed defendant as to what properties stood of record in the latter's name, thus showing an intent to prevent defendant from personally selling or incumbering any of them. By holding blank deeds signed by defendant, which decedent as a notary public could complete, he reserved the right to recall or revoke any title standing in defendant's name or to convey the property to other persons without defendant's knowledge. Decedent's acts manifestly evinced an intent that title should not pass to defendant.

■ 4. Decedent's possession was continuous and uninterrupted for 14 years prior to his death and thereafter possession passed to and remained in his executors until the date of trial. At no time did defendant attempt to exercise domain or control over the property.

■ 5. The evidence is uncontradicted that decedent paid

all taxes levied and assessed upon the property after the date of the Davis deed in 1933.

Such defense as defendant may have had to the action is barred by section 319 of the Code of Civil Procedure which provides that "No . . . defense to an action, arising out of the title to real property . . . can be effectual, unless it appear that the person . . . making the defense . . . was seised or possessed of the premises in question within five years before the commencement of the act in respect to which such action is prosecuted or defense made."

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.