No. 19,520.

Donald Lee Schreiner *v.* The People of the State of Colorado.

(360 P. [2d] 443)

Decided March 20, 1961.   Rehearing denied April 6, 1961.

Plaintiff in error, pro se.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Robert G. Pierce, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

DEFENDANT and one Gallegos were jointly charged in a two-count information with so-called aggravated robbery and conspiracy to commit the same. Thereafter defendant sought and obtained a separate trial and the jury adjudged him guilty on both counts of the information. Motion for a new trial was filed and after argument denied and defendant was sentenced to the state penitentiary for a term of not less than twelve nor more than twenty years on the aggravated robbery charge, and not less than eight nor more than ten years on the conspiracy charge, the sentences to be served concurrently. From the judgment and sentence imposed defendant seeks review in this court.

Three assignments of error are urged: (1) there was insufficient evidence to link this defendant with the robbery or conspiracy; (2) the trial court erred in instructing the jury pertaining to accessories; and (3) the trial court erred in refusing defendant's tendered instruction No. 1.

On September 2, 1958, at 10 o'clock in the morning, two persons entered the Freed Pharmacy at 3209 West Colfax Avenue, and announced that "this is a holdup." In the pharmacy at the time were the proprietor, his wife and a customer. One gunman ordered these three to the rear of the drug store, stating that he wanted narcotics. At gunpoint the proprietor unlocked the narcotics cabinet and this particular robber, ignoring many other articles in the narcotics cabinet, took a small bottle labelled "Dilaudid" and containing about twenty Dilaudid tablets. Dilaudid was described as a "potent narcotic" which could be purchased only by prescription. The other robber remained in the front of the drug store

and rifled two cash registers, taking approximately $125.00. Whereupon the two fled the store.

At the trial the customer who was present at the time of the holdup identified this defendant with certainty and definiteness as the one who took the narcotics. However, he could not identify the gunman who remained in the front part of the store, explaining that he did not get a good look at him. This customer also stated that defendant was armed with a hand weapon which looked like a German luger, whereas the "other fellow * * * had a nickel-plated revolver." In describing the appearance of the defendant the customer observed that he wore dark glasses, a dark hat with a light brim, a dark jacket, had a little paper mustache glued to his face and appeared to have suntan lotion smeared on his face.

The proprietor testified that he was unable to identify either of the robbers, although he recalled that both wore dark hats, dark jackets, and dark glasses, and were both dark complexioned.

Police officers testified that on September 3, 1958, around 10 o'clock in the morning they arrested defendant and Gallegos in the defendant's apartment at 1244 Grant Street, Denver. Gallegos admitted the police officers to the apartment and defendant as of that moment was observed standing by a kitchen table. Officers testified that defendant then dropped a bottle to the floor. This small bottle was labelled "Dilaudid" and was identified by the proprietor of the pharmacy as being the same type of bottle as the one taken from his store in the robbery. Search of defendant's apartment disclosed a loaded pistol lying on the kitchen table, two dark hats, two pairs of dark glasses, a dark jacket and several additional pistols. Both the proprietor of the store and the customer identified the guns, dark glasses, dark hats and jacket as being similar to those used by the robbers. The foregoing is a summary of the evidence adduced by the People. Defendant's motion for a directed verdict of not guilty was denied. Defendant took the stand and

denied any knowledge of, or participation in, the robbery. Gallegos testified that he "found" the guns, jacket, dark glasses and dark hats and brought them to defendant's apartment. Finally, an attorney who had previously represented defendant, but who had withdrawn prior to trial, testified that he had interviewed both the proprietor of the drug store and the customer shortly after the robbery and at that time each stated he could not identify either of the two robbers and that each thought the assailants were Spanish Americans. In this regard the customer said that he had picked out and identified this defendant in a police lineup within a few days after the robbery.

Defendant's first assignment of error relates to the alleged insufficiency of the evidence to support the verdict and in particular he complains there was a lack of evidence tending to show that he participated in this robbery. We think there was ample evidence tending to connect this defendant with the offense. True, the evidence was conflicting as is often the case. The customer, under oath, positively identified defendant as one of the two robbers. The various items found in defendant's apartment and particularly the small bottle labelled "Dilaudid" are highly incriminating circumstances. The evidence, both direct and circumstantial, was of sufficient substance to support the verdict. The mere fact that defendant denied the crime and that Gallegos claimed to have "found" the incriminating articles is not conclusive, nor does the testimony of defendant's erstwhile attorney necessarily neutralize the effect of the identification made by the customer, who after extensive cross-examination steadfastly maintained that defendant was one of the two robbers. This presented nothing more than a conflict in the evidence to be resolved by the jury. And even though the evidence be conflicting, there nonetheless is still ample evidence of a substantial nature to support the verdict of the jury that

defendant was guilty beyond any reasonable doubt of the crimes charged.

In *Eachus v. People,* 77 Colo. 445, 236 Pac. 1009, this Court said: "It was the exclusive province of the jury to determine the weight and sufficiency of the evidence and to pass upon the credibility of the witnesses. In the light of repeated decisions of this Court we cannot disturb the verdict * * *. There was evidence from which the jury might reasonably have found as they did, though there was other evidence from which a contrary inference might have been drawn. Under that condition we cannot disturb the verdict." This same observation could well be made in the instant case. In support of this general proposition, also see *Trujillo v. People,* 112 Colo. 91, 146 P. (2d) 896, where the facts bear a striking resemblance to those of the instant case; *Gonzales v. People,* 128 Colo. 522, 264 P. (2d) 508; and *Ruff v. People,* 78 Colo. 474, 242 Pac. 633.

The trial court instructed the jury on the legal responsibility of an accessory, giving the following statutory definition:

"An accessory is he who stands by and aids, abets or assists, or who, not being present aiding or abetting or assisting, has advised and encouraged the perpetration of the crime. He who thus aids, abets or assists, advises or encourages shall be deemed and considered as a principal and punished accordingly * * *." C.R.S. '53, 40-1-2.

In this regard defendant complains that *if* guilty at all he was guilty as a principal and that an instruction on accessory under the facts and circumstances of the case was misleading and confusing. Also, he contends that the information should have spelled out which one of the defendants was charged as a principal and which as an accessory. Finally, he urges that he should have been advised by the information as to the specific acts on his part which were done as an accessory, as opposed to a principal. It is obvious that coloring this entire assignment of error is the belief that because the People's

theory of the case was that defendant was physically present in the pharmacy, an instruction on accessory is thereby rendered inapplicable. Such is not the law. The statute quoted, supra, clearly states that one who is present and aids, abets or assists is deemed, considered and punished as a principal. Where, as here, two persons are acting in concert, one holding the victims at bay, the other emptying the cash register, an instruction on accessory is in order. In the absence of such an instruction the jury might conceivably acquit the one who held the victims at bay in the mistaken belief that since he did not *personally* take the money from the register he was therefore innocent of the charge of robbery. It has long been the law in Colorado that an accessory who stands by and aids in the perpetration of a crime may properly be charged as a principal, and in the case of co-defendants it is unnecessary to spell out which one is the principal and which the accessory, nor is it necessary to characterize and classify the specific acts of each. See *Block v. People,* 125 Colo. 36, 240 P. (2d) 512; *Erwin v. People,* 126 Colo. 28, 245 P. (2d) 1171; *Mulligan v. People,* 68 Colo. 17, 189 Pac. 5.

Defendant finally claims error in the refusal of the trial court to give his tendered instruction No. 1: "The jury is instructed that, in the absence of proof to the contrary, it may be inferred or presumed that a person continues to have the same physical characteristics. This inference has greater strength when the period of time in question is short, or when the physical characteristics are ordinarily of a permanent character. The inference has less strength when the characteristics which acclaim [sic] to have continued is one which commonly changes or disappears with the passing of time." No authority for this type of an instruction is cited, it is objectionable as being argumentative, and we see no error in refusing it.

Careful examination of the entire record convinces us

that defendant received a fair trial under the watchful eye of an experienced judge.

The judgment is affirmed.