No. 19,203.

CHARLES HAMPTON *v.* PEOPLE OF THE
STATE OF COLORADO.
(362 P. [2d] 864)

Decided May 29, 1961.   Rehearing denied July 3, 1961.

Plaintiff in error, pro se.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK

E. HICKEY, Deputy, Mr. ROBERT G. PIERCE, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

HAMPTON, Colbert and Reynolds were jointly charged with so-called aggravated robbery and conspiracy to commit the same. Colbert and Reynolds pleaded guilty and were sentenced to the state penitentiary. Hampton pleaded not guilty, but a jury of his peers adjudged him guilty of both charges. Hampton was also sentenced to the state penitentiary and he alone seeks reversal of the judgment and sentence of the trial court.

In his motion for a new trial Hampton alleged that the trial court committed reversible error in the following respects: (1) That the evidence against him was insufficient to sustain the verdict and that his motion to dismiss for lack of evidence should have been granted, and in particular it is urged there was *no* evidence tending to implicate Hampton in the robbery, except his confession (!) and further that there was a fatal variance between the information and the proof as to the ownership of the money taken in the robbery; (2) that the trial court improperly overruled Hampton's motion for a mistrial interposed when one of his witnesses on cross-examination testified that Hampton had "helped" him in the burglary of Saltwater Dumas restaurant; and (3) that the trial court committed error in receiving into evidence certain exhibits, namely three Busley money bags and a certain Japanese luger.

Careful examination of the record convinces us that all of these assignments of error are without merit. However, in order to demonstrate such it becomes necessary to briefly outline the evidence adduced at the trial.

It is undisputed that Hampton, Colbert and Reynolds

entered a Busley Super Market on West 8th Avenue in Denver at about 7 o'clock P.M. on December 18, 1957. At gunpoint Colbert advised all that "this is a stickup" and ordered Trumble, the manager of this particular super market, to open the safe. Trumble complied with this command and delivered to Colbert over $4,000. Reynolds with the assistance of a pointed gun also emptied a cash register. Hampton was only some few feet away from Reynolds when this particular incident occurred. It is equally undisputed that Hampton himself displayed no gun in the super market, nor did he himself say anything nor take any money. However, on signal all three fled the store together. Moments later and some six blocks away from the Busley Super Market police officers stopped an automobile in which there appeared to be only one occupant, namely the driver! It was shortly thereafter determined that the driver of this vehicle was Colbert and upon closer inspection Hampton was found lying on the floor in the front seat and Reynolds on the floor in the back seat. Three money bags which were identified as similar to the ones used by Busley were also found on the floor of the car, and these contained the loot only recently taken from the market. When first observed by the police officers Hampton was fumbling under a blanket on the front seat. It later developed that the Japanese luger, referred to, supra, was under this blanket. Hampton made admissions to the police in which he admitted that along with Colbert and Reynolds he helped plan the robbery to the end that together they "cased" the store at about 3 o'clock P.M. on the day of the holdup; that he knew when he entered the store that a holdup was to be staged; and that he most certainly expected to get his one-third split of the loot. Initially he stated that he took the Japanese luger into the store but that it was hidden under his coat. Later, however, he changed his story on this particular and stated that because the gun was unwieldy he left it in the car during the holdup and that when arrested he

was trying to locate the gun under the blanket and intended to wipe off his fingerprints. A few days after the robbery Colbert, Reynolds and Hampton jointly made a detailed written confession which each signed as being a truthful account of the robbery. In this Hampton confessed that he participated in the robbery in the manner and to the extent outlined, supra. The foregoing was established by the People in their presentation of their evidence.

At trial Hampton repudiated his admissions and confession and testified that although he entered and left Busleys with Colbert and Reynolds, he nevertheless did *not* know beforehand that a robbery was to be perpetrated. He said he had been deceived into going into the store by Colbert, who said he was going to cash a check and would repay an old debt to Hampton with the proceeds. Colbert and Reynolds each took the stand and corroborated Hampton's testimony.

Without belaboring the point, it should be obvious to all, except possibly Hampton himself, that there is ample evidence to support the guilty verdict returned by the jury. The People in their presentation made a prima facie case of sufficient stature to easily withstand Hampton's motion to dismiss. Hampton's evidence did no more than present a disputed issue of fact to be resolved by the jury. Under such circumstances the verdict of the jury should not, indeed can not, be disturbed. See *Eachus v. People,* 77 Colo. 445, 236 Pac. 1009; *Trujillo v. People,* 112 Colo. 91, 146 P. (2d) 896; *Gonzales v. People,* 128 Colo. 522, 264 P. (2d) 508, and *Schreiner v. People,* decided by this Court on March 20, 1961.

In connection with the alleged insufficiency of the evidence, Hampton also argues that there is no independent evidence tending to corroborate his confession and that standing alone, the confession is not sufficient to warrant submission of the case to the jury. It is true as was stated in *Roberts v. People,* 11 Colo. 213, 17 Pac. 637, that "the prisoner's confession of the crime

must be corroborated by other and independent evidence." However, this Court has repeatedly held that this requirement of other and independent evidence "need be only slight" and is met if the additional evidence is sufficient to convince the jury that the crime charged is real and not imaginary. See *Bunch v. People,* 87 Colo. 84, 285 Pac. 766; *Williams v. People,* 114 Colo. 207, 158 P. (2d) 447; and *Downey v. People,* 121 Colo. 307, 215 P. (2d) 802. In the instant case the "other and independent evidence" instead of being only slight is very substantial, both as to quantity and quality. The three money bags and Japanese luger are excellent examples of "other and independent evidence" which tends to support and give credence to Hampton's confession. Obviously there was no error in receiving these exhibits into evidence, as such was urged by Hampton in his motion for a new trial. See *Baca v. People,* 139 Colo. 111, 336 P. (2d) 712.

■ As an additional corollary of this alleged insufficiency of the evidence Hampton urges that there was a fatal variance between the information and the evidence as to ownership of the monies taken in the robbery. The information is in the language of the applicable statute (C.R.S. '53, 40-5-1) and alleges, inter alia, that the money was forcibly taken "from the person and against the will of Paul Trumble." Hampton believes there is a variance in that the monies were actually "owned" by Busleys and did not belong to Trumble. This contention is without merit. The general rule in this regard is succinctly stated in 77 C.J.S. Robbery, §38c, at p. 476:

" * * * it is not necessary to allege that the person from whom the property was taken was the owner thereof, since it is sufficient if it appears from the allegations that accused was not the owner. Irrespective of where the legal title lies, ownership may properly be laid in the person from whose physical possession the property was taken * * *."

See also *Albert v. People,* 90 Colo. 219, 7 P. (2d) 822.

Finally, Hampton contends that the trial court committed reversible error in denying his motion for a mistrial, which motion was based on certain answers given by his witness Reynolds upon cross-examination, which disclosed to the jury that Hampton was involved in the commission of a crime other than the ones charged in the information. Reynolds was called as a witness by Hampton and the effect of Reynolds' testimony was to exculpate Hampton. On cross-examination the district attorney was attempting to show that Reynolds' testimony in court varied substantially from his statement to the police officers shortly after the commission of the robbery. In this context the following questions were put to the witness Reynolds:

"Q. You can't remember the time when Capt. Stanley had you down there and interrogated you orally? A. Not alone. Q. Well, did you ever remember telling Capt. Stanley that you were a cement worker? A. Yes, I told him that. Q. Did you ever tell [Capt. Stanley] that you were on probation for a burglary at Salt Water Dumas? A. Yes, I told him that. Q. Who did you tell him helped you in that burglary? A. Charles Hampton. Q. Who? A. Charles Hampton."

It is noted that counsel for Hampton voiced no objection to the allegedly improper question before the answer was given, even though it was twice put to the witness. Neither did counsel move to strike the question and answer and request the trial court to instruct the jury to disregard the same. Rather counsel wanted a mistrial and nothing else. The trial court denied this request and in so doing, under the circumstances of this case, did not commit reversible error.

Hampton voluntarily took the witness stand and testified in his own behalf. By this act of testifying Hampton's credibility became an issue in the case and the fact of prior felony convictions under these circumstances is proper and admissible on the theory that such tends to adversely affect his credibility. See *Routa v. People,* 117

Colo. 564, 192 P. (2d) 436; *Hendricks v. People,* 78 Colo. 264, 241 P. 734, and C.R.S. '53, 153-1-1. On direct examination Hampton admitted that he had been convicted of burglary in Texas in 1951 and also of a burglary in Colorado in 1956. If the jury believed that the burglary of the Saltwater Dumas restaurant testified to by the witness Reynolds formed the basis for the conviction of Hampton for burglary in Colorado in 1956, then certainly no error was committed. In such circumstances cross-examination is not limited to a single question to establish the fact of a conviction, but reasonable latitude is to be permitted at least to the extent of ascertaining the nature and name of the particular crime for which Hampton was convicted. See *Hendricks v. People,* supra, and *Davis v. People,* 77 Colo. 546, 238 Pac. 25. And whether the nature of the crime was elicited from Hampton or Reynolds is immaterial if the fact of the conviction be otherwise admissible.

Assuming for the sake of argument the only remaining alternative, namely that the burglary referred to by the witness Reynolds was different from the burglary conviction suffered by Hampton in Colorado in 1956, still under the circumstances of this case no reversible error occurred. Throughout the entire trial counsel for Hampton at every opportunity forewarned and in so many words acquainted the jury with the fact of his client's various "involvements" with the law. On voir dire counsel for Hampton inquired of prospective jurors as to whether the fact that Hampton had been "involved with the law and committed indiscretions as a youngster" would affect their judgment. In his opening statement counsel similarly advised the jury that Hampton "during his youth, during his late teens * * * was involved with the law. I believe for petty theft, perhaps burglary." It later developed that counsel was unduly modest in the recitation of his client's involvements, inasmuch as Hampton freely confessed the two burglary convictions outlined supra. Without objection during the defend-

ant's presentation of his case the jury was also advised that while on bond pending a determination of his application for probation in 1956, Hampton was arrested in Denver on suspicion of burglary and that such was the reason his application for probation was ultimately denied. Also without objection it was disclosed that he thereafter served a short term in the state penitentiary at Canon City and was released therefrom in November 1957. Finally it was disclosed, again without objection, that shortly after his release from the state penitentiary he was arrested and jailed in Arapahoe County on suspicion of committing a burglary involving the theft of some guns. The obvious inference, incidentally, was that these were the guns used in the robbery of Busleys super market. Viewed in this setting any error in refusing to declare a mistrial because the jury learned that Hampton had "helped" Reynolds burglarize Saltwater Dumas restaurant is microscopic in nature and does not even approach reversible proportions.

In closing it should be noted that Hampton's theory of the case actually rendered this line of inquiry as to the nature and extent of his association with Reynolds material to the issues in the case. At trial Hampton admitted his physical presence, along with that of Reynolds and Colbert, at the scene of the robbery, but claimed he had no guilty knowledge that a robbery was about to be staged nor did he in any manner participate in the crime. Also during the presentation of Hampton's case it developed that Hampton's association with Reynolds was allegedly not close but only casual. In the face of such assertions it was proper for the district attorney to show that in fact Hampton had only recently before "helped" Reynolds commit another criminal offense. Such logically tends to weaken Hampton's testimony that though present when the robbery of the Busleys store was perpetrated he was only an innocent victim of circumstances and possessed no guilty knowledge. Additionally, such testimony also tends to refute the as-

sertion that Hampton and Reynolds were only slightly acquainted. 22 C.J.S. at page 1098 provides:

"In general, evidence of other crimes committed or attempted by accused, is admissible to prove *scienter,* or *guilty* or *criminal knowledge,* with respect to the crime charged, at least if similar thereto and occurring at or about the same time, or at a time not too remote. For such evidence to be admissible, *such knowledge must be in issue* or be an element of the offense charged, and the other offenses must be so connected with that charged as to throw light on the question; and it has been required that the evidence sought to be introduced be necessary to establish the guilty knowledge. *Proper evidence tending to show guilty knowledge is not to be excluded because disclosing the commission of a different crime by accused."* (Emphasis supplied.)

See also *Dockerty v. People,* 96 Colo. 338, 44 P. (2d) 1013.

Hampton was very capably defended by experienced counsel. The trial was conducted under the watchful eye of an experienced trial judge. No reversible error occurred and the judgment should be and is affirmed.