Mr. Justice Groves
delivered the opinion of the Court.
The defendant (plaintiff in error) was charged with larceny of a watch from the person and conspiracy to commit such larceny. He was convicted of the larceny charge and acquitted of conspiracy. He has brought writ of error for review of the conviction. We affirm.
The victim was head waiter at a Denver restaurant which closed on Sundays. On the particular Sunday involved the victim had visited several bars and had become somewhat intoxicated. At one lounge, he was seated at the bar, sipping beer. In this establishment there were four other people: the bartender, two men who were playing pool, and a woman. The woman approached and sat on the stool on the victim’s right side, and the victim purchased a drink for her. She made a sexual proposition, indicating $10 as the quid pro quo. He told her that he did not have that much with him but that he could obtain it in his room if she could accompany him there. She then suggested that he put his jewelry away and, pursuant to the suggestion, he placed *405 his diamond ring in his left trousers’ pocket and his watch in the right pocket.
The woman then went over and talked to the two men who were shooting pool. One of these men was the defendant. The woman returned to the victim’s left side and asked him to hand her her drink, which he did. Shortly thereafter the victim discovered that she had disappeared, and he never saw her again. He placed his hand in his left pocket and discovered the diamond ring was missing.
He started arguing with the bartender, attempting unsuccessfully to ascertain the woman’s identity. The two other men walked over and told the victim that they would take him home, as he was drunk. He permitted them to drive him to the hotel where he lived. He sat between the two men in the front seat, with the defendant driving. The victim testified that during the ride he kept his right hand in his pocket, clutching the watch. The man to the victim’s right stated that he and the defendant would get the ring back for him. Either the defendant or his companion stated that they needed gasoline for the car, and the victim stated that he would give them $10 that he had in his room.
The three went to the victim’s room, and he gave them the $10. They asked the victim to follow them to the street “so the clerk doesn’t think there is anything suspicious.” When they reached the car the victim discovered that his watch was gone. The transcript continues as follows:
“I says, ‘You dirty s.o.b.’s,’ I says, ‘Your girl friend has taken my ring. Now you have taken my watch.’ ”
“I have a little bottle opener which the head waiter, the man that works in the restaurant uses to open up the wine bottles, to pull out this. I reach for this in my pocket, they took me under control. Which they were two good-sized men. And you know, maybe they’ll whip you. So they got in their car, they drove away, and that was the last of it.”
*406 Late the following afternoon the defendant sought out the victim at the restaurant at which he was head waiter. The defendant stated that he knew that the ring and watch were valuable, knew where they were, and that “I’d be happy to get them for you if you would give me fifty dollars.” The victim attempted to give the defendant a $10 bill and asked his son, who was nearby, to accompany the defendant, stating to the defendant that upon their return with the watch and ring he would pay the further sum of $20. The defendant advised that “nobody’s going with me,” whereupon the defendant was restrained until police officers arrived and arrested the defendant.
Before the defendant came into the restaurant, the victim saw him approaching in his automobile and watched him park it. He observed the defendant’s companion of the day before in the automobile. This person did not enter the restaurant and, so far as the record discloses, was never apprehended.
I.
The court by Instruction No. 10 instructed the jury as follows:
“It is necessary for you to consider the portion following of the statutory definition of an accessory, viz:
“ ‘An accessory is he or she who stands by and aids, abets or assists, or who, not being present, aiding, abetting or assisting, hath advised and encouraged the perpetration of the crime. He or she who thus aids, abets or assists, advises or encourages, shall be deemed and considered as principal and punished accordingly.’ ”
The defendant argues that the giving of this instruction was error for the reasons that (1) there was no evidence showing that the defendant was an accessory; and (2) that, since the watch was in the right pocket and the defendant was to the left of the victim while in the car, any theft of the watch would have to have been by the other man and, because the jury found there was no *407 conspiracy, the defendant could not have been an accessory.
The defendant introduced no evidence. The testimony of the victim was without conflict in all material respects. Under his testimony the jury was justified in finding that one of the two men took the watch between the time the three emerged from the car at the victim’s hotel and the time the victim discovered that the watch was gone. We find nothing in the record to indicate which one of the two men actually took the watch. Under the evidence the jury properly could find that one of the men was a principal and the other an accessory as defined in the instruction or could find them both principals. This being true, the jury properly could find the defendant guilty as a principal, no matter in which capacity he acted. Cf. Cruz v. People, 147 Colo. 528, 364 P.2d 561 (1961); and Schreiner v. People, 146 Colo. 19, 360 P.2d 443 (1961).
No authority has been cited to us that, if one is not a conspirator, of necessity he cannot be an accessory. We do not think the absence of the former negates the latter.
II.
The defendant has argued strenuously that the verdict acquitting him of conspiracy to commit larceny was inconsistent with the verdict of guilty of the charge of larceny itself and, therefore, the latter verdict must fall. He cites Robles v. People, 160 Colo. 297, 417 P.2d 232 (1966), and its successor People v. Way, 165 Colo. 161, 437 P.2d 535 (1968). In Robles the defendant was charged with robbery and conspiracy to commit the same. A conviction of either offense could be supported only by an alleged extra-judicial statement of the defendant that he committed the robbery. The jury found the defendant not guilty of the robbery and guilty of the conspiracy. In the opinion the following statement was made:
“The very same evidence which the jury apparently did *408 not believe was sufficient to prove the defendant participated in the robbery was the only evidence which could prove him guilty of robbery. Under such circumstances, the conspiracy verdict cannot stand.”
The circumstances in Way, supra, were identical.
In a number of cases, Robles has been distinguished, and its application held to be limited to the factual situation there presented. Armijo v. People, 170 Colo. 411, 462 P.2d 500 (1969); Morehead v. People, 167 Colo. 287, 447 P.2d 215 (1968); Salazar v. People, 166 Colo. 508, 445 P.2d 60 (1968); Scott v. People, 166 Colo. 432, 444 P.2d 388 (1968); Pooley v. People, 164 Colo. 484, 436 P.2d 118 (1968). It is to be noted that in all of these cases, the defendant was acquitted of the alleged principal crime and was convicted of conspiracy to commit that crime. The instant case is distinguishable from Robles and Way because here the defendant was convicted of the principal crime and acquitted of the conspiracy.
The defendant argues, however, that the analogy of Robles and Way should be applied here, with the resulting ruling that the conviction cannot stand. Without objection, the court instructed the jury on conspiracy as follows:
“To convict one of the crime of conspiracy, three elements must necessarily be proven beyond a reasonable doubt. There must be a real agreement, combination or confederation with a common design between two or more persons to accomplish an unlawful purpose, which in this case is the commission of the crime of larceny from the person.
“This common design and unlawful purpose may be proved either by direct evidence or by proof of such circumstances as naturally tend to prove it.”
It is apparent to us that the jury, after studying the elements of conspiracy as presented to them, might conclude that the evidence showed beyond a reasonable doubt that the defendant was guilty of the crime of larceny *409 from the person but did not show beyond a reasonable doubt that he had been guilty of a conspiracy. We do not adopt the suggested rule that, if people act in concert in- the commission of a crime, it follows that they must have had a conspiracy as that term is defined in our statutes. C.R.S. 1963, 40-7-35.
III.
The defendant complains of the giving over his objection of the stock instruction on a defendant’s failure to testify. While we have said that the better practice is to not give this instruction if there is an objection, nevertheless submitting it to the jury is not reversible error. McLean v. People, 172 Colo. 338, 473 P.2d 715 (1970); and Kimmel v. People, 172 Colo. 333, 473 P.2d 167 (1970).
IV.
The remaining assignment of error, that the defendant’s motions for judgment of acquittal should have been sustained, is without merit.
Judgment affirmed.
Mr. Chief Justice Pringle and Mr. Justice Lee not participating.